[Crim. No. 1937.    Fourth Dist.    Dec. 14, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. FREDDIE LEE HARRIS, Defendant and Appellant.

Charles E. Ward, Public Defender, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant was convicted by a jury of violation of Penal Code, section 211 (armed robbery of William Murray on January 16, 1963). He also admitted two prior felony convictions, robbery in 1955 and forgery in 1959.

The victim testified that defendant and another man, about 3:30 p.m. on January 16, 1963, took him to his place of employment to get his pay, consisting of $201 paid principally in twenty-dollar bills, which the victim placed in his shirt pocket. The victim bought some whiskey on the way to Albert Johnson's home, where defendant and another person rolled dice, the victim not engaging in the game. After leaving the Johnson home, the victim met his girl friend, to whom he exhibited his money. She told him to take the money home. Defendant, who had accompanied the victim, asked the victim to drive him to Fontana to visit his sick children. On the way to Fontana, another half-pint bottle of whiskey was purchased by the victim, who received in change two silver dollars. When they had reached the California Club, defendant asked the victim to stop so he could check something. Inside the club, the victim ordered food. The defendant went into a back room, returned shortly and asked the victim if he was ready to leave. As they walked outside, defendant displayed a revolver, stated that it was real, fired it once into the air, and said, "Man, you had too much to drink there. I'm going to take your money home to your mama. . . . Give me your money, man." The victim refused. A scuffle ensued resulting in the tearing off of the victim's shirt pocket by the defendant. Defendant ordered the victim into the car.

While defendant was driving, the victim hit defendant with a rock that he had picked up before entering the car. The defendant threatened to kill the victim if he found the rock, but, not finding it, he drove to an abandoned service station. The defendant jumped out of the car and fled. The victim drove to San Bernardino where he telephoned the sheriff's office. The investigating officer found scuff marks in the dirt of the parking lot of the California Club. Also found were a wrench and a pencil, identified as being in the victim's pocket before the scuffle, together with a piece of fabric and white buttons similar to those on the victim's shirt. The victim gave a description of the robber to the officer, told him he knew the robber only by the name of "Freddie," and that they had been together earlier that day. Inquiries at the California Club disclosed that the victim's companion was known only as "Freddie." Upon inquiry at 1021 West Eighth Street, the officer was told that Freddie Harris had been there earlier. At a pool hall, the officer discovered that Freddie Lee Harris lived directly over the pool hall, in apartment 2. The officer drove the victim home, not wanting him "to become involved in this." The officer returned to the substation for help, made out a report and waited until after 12 p.m. to go to defendant's apartment, "feeling sure that the subject would be in bed at this time when we went back there." The officer knocked on the apartment door. Defendant responded with, "Who is there?" The officer replied that it was the San Bernardino sheriff's department and they wanted to speak to him. No response was heard. The officer stated that they "were investigating a crime and that if he didn't open the door that we would use forcible [*sic*] force to come inside." Still no response. The officers "kicked the door in. Not kicked in; generally kicked it and it swung open." The defendant was in bed. He was informed that he was under arrest for investigation of armed robbery. The sum of $147.17 was found on the dresser, including six twenty-dollar bills and two silver dollars. The officers searched the apartment but found no gun. The officers observed an abrasion and bruise on the defendant's right temple. Defendant said he had got the money by working at the Rancho Cleaners some two weeks before; that he did not know the victim; yet later he said that he did know him and had dropped him off in San Bernardino before going to Fontana and that he had won some of the money playing craps.

At the trial, defendant testified that the victim was intoxi-

cated and that the defendant drove from the liquor store to the California Club. Upon leaving the club, the defendant and the victim argued over who was to drive; that the defendant gave the victim the keys and went back inside the club, leaving the victim outside; that after remaining in the club for a period of time, the defendant returned to San Bernardino with a Mr. Jackie Anderson.

Defendant claimed that 100 dollars of the sum of money found in the apartment, consisting of five twenty-dollar bills, was given to him by his mother-in-law to make a payment on her car. The defendant said he obtained the silver dollars at the pool hall. Some of the above incidents were corroborated by the various defense witnesses, but obviously the triers of fact did not accept their testimony as true, since defendant was found guilty.

Defendant contends on appeal that the trial court erred in admitting evidence which resulted from the officers' entry and search of defendant's apartment on the ground that all such evidence was obtained in the course of an unlawful search. ■ Since the search was made without a warrant, the burden was on the prosecution to show it was justified as an incident to a lawful arrest. (*People* v. *Shelton,* 60 Cal.2d 740, 744 [36 Cal.Rptr. 433, 388 P.2d 665]; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) A peace officer can arrest without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (Pen. Code, § 836, subd. 3.) ■ Probable cause for an arrest is shown if the facts and circumstances known to the officers at the time of the arrest would warrant a prudent man in believing that the offense had been committed and committed by the person about to be arrested. (*People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577].) If the officers have the above reasonable belief, they may break open the door of the dwelling in which the person is or is reasonably believed to be after having demanded admittance and explained the purpose for which admittance is sought. (Pen. Code, § 844.)

■ When the officers stood before the apartment door, their knowledge of the crime was this: The alleged victim had reported an armed robbery perpetrated outside the California Club by a companion named ''Freddie''; marks were found indicating a scuffle had occurred at the alleged robbery site; a portion of the victim's torn pocket, a pencil and a wrench, allegedly belonging to the victim, were found at the same site; persons inside the club confirmed that the victim

had been there earlier with a person named "Freddie"; the victim's companion of that afternoon was identified as Freddie Lee Harris; Freddie Lee Harris lived in apartment 2 above the pool hall.

We concur with the trial court's finding that under these circumstances the officers had reasonable cause sufficient for a valid arrest. (Pen. Code, § 836.) The officers also complied with the requirements of Penal Code, section 844, having identified themselves, demanded admittance and explained the purpose of their demand. Since the officers' entry was lawful, the search made of the apartment was also lawful and the evidence obtained thereby was properly admitted into evidence.

The defendant contends that the evidence was insufficient to support the verdict. ■ The jury is the sole judge of the credibility of the witnesses and of the weight to be afforded the testimony of each. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) ■ The jury may reject any part of a witness' testimony and give credence to other portions. (*People* v. *Bodkin,* 196 Cal.App.2d 412, 414 [16 Cal.Rptr. 506].) ■ Though the victim in the instant case may have been impeached on certain points, the effect of that impeachment on the scales of conflicting testimony was for the determination of the jury. In light of the evidence, which is strengthened by the presumption in favor of the judgment on appeal, carrying with it all favorable inferences, we cannot say that there was insufficient evidence to sustain the verdict.

The public defender's vigorous argument for prohibition of impeachment by proof of prior convictions is not meritorious. He must look to a body other than this court to change a rule of evidence so well settled in this state.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.