[Civ. No. 25512. Second Dist., Div. One. Aug. 13, 1962.]

PELAYO FERNANDEZ, Plaintiff and Respondent, v. SECURITY-FIRST NATIONAL BANK, as Executor, etc., Defendant and Appellant.

John E. Crooks for Defendant and Appellant.

W. E. Kalbfleisch for Plaintiff and Respondent.

FOURT, J.—After the second trial of the within action judgment was rendered for the defendant.[1] On the basis of newly discovered evidence the trial court granted plaintiff's motion for a new trial. Defendant appeals from the order granting the motion.

A résumé of the material facts is as follows:

Plaintiff brought this action against defendant executor to recover the sum of $4,500, plus interest, after rejection of his creditor's claim. The basis of the action was a purported loan made by plaintiff to deceased on or about January 1957.

On December 14, 1960, findings of fact and conclusions of law were filed and on December 16, 1960, judgment was entered in favor of defendant. On January 3, 1961, there was filed a motion for new trial (and/or notice of intention of) on behalf of plaintiff. One of the bases set forth therein was "3. NEWLY DISCOVERED EVIDENCE, MATERIAL FOR THE PARTY (Plaintiff) MAKING THIS APPLICATION, WHICH HE COULD NOT, WITH REASONABLE DILIGENCE, HAVE DISCOVERED AND PRODUCED AT THE TRIAL."

On January 10, 1961, four affidavits were filed in support of plaintiff's motion for new trial. As disclosed by the affidavits, the alleged newly discovered evidence consisted of the following: *First,* the fact that plaintiff had, subsequent to the trial but prior to entry of judgment, taken a polygraph or lie detection test and the results thereof, and *second,* that plaintiff had located one Charles M. Hover, a percipient witness to the purported loan transaction between plaintiff and deceased.

---

[1]The first trial resulted in judgment in favor of plaintiff. Defendant's motion for new trial was granted on the basis of insufficiency of the evidence.

■■■ Insofar as the evidence relating to the polygraph test is concerned this could not serve as a basis for the granting of a motion for a new trial on the ground of newly discovered evidence. The evidence is not admissible. (See *People* v. *Jones*, 52 Cal.2d 636 [343 P.2d 577]; *People* v. *Adams*, 182 Cal.App.2d 27 [5 Cal.Rptr. 795]; *People* v. *Aragon*, 154 Cal. App.2d 646 [316 P.2d 370]; *People* v. *Wochnick*, 98 Cal. App.2d 124 [219 P.2d 70].) It is appropriately stated in *People* v. *Aragon, supra,* at page 658 in part, as follows:

". . . [T]here is nothing concerning the accuracy of such a test; there is no showing that the tests, even if properly given, have achieved sceintific [*sic*] recognition in this state; there is no foundation for the admission of any test results; and there is no stipulation that the testimony could be received in evidence."

In light of the above it would serve no useful purpose to discuss the matters set forth in Mr. Gugas' affidavit (i.e. he performed the polygraph test) or those portions of plaintiff's affidavit concerning the taking of the polygraph test and its results.

The affidavits insofar as they concern the newly discovered evidence relating to Mr. Hover, witness to the alleged loan transaction, are in substance as follows:

(1) *Mr. Hover's affidavit*: He asserts that he was acquainted with both plaintiff and deceased; that "on or about January 31st, 1957, sometime in the morning at about or prior to 9:00 A. M., affiant went to . . . [plaintiff's store] and saw said . . . [plaintiff] there and entered into said . . . store, and was told to wait for a few minutes after he had finished his business. . . . that he was close to and in the immediate vicinity of the cash register which is on a counter and he then saw . . . [plaintiff] walk to and go behind said counter and to said cash register and bring out a bag . . . that at the time he entered said Store, he saw . . . [deceased] and spoke to him . . . that he then saw . . . [plaintiff] go over to and talk in [S]panish to . . . [deceased] and that both . . . [plaintiff] and . . . [deceased] were in plain view of this affiant and he then saw . . . [plaintiff] open said bag and bring out a number of bundles of paper money and give [them] to . . . [deceased] and affiant then saw . . . [deceased] run through and/or thumb said bundles as if he was counting said money; and next affiant saw . . . [deceased] sign some piece of paper and give [it] to . . . [plaintiff] and thereafter . . . [deceased] opened his shirt in the front and stuffed said

bundles of money inside of his shirt, buttoned his opened shirt and then walked out of said Store." Mr. Hover further stated in his affidavit that after deceased left the store affiant spoke to plaintiff and said to plaintiff "these words or words to this effect: 'How come you (Fernandez) gave him (Santander) a lot of money or what appeared to be a lot of money?'; and that in reply . . . [plaintiff] said to this affiant these words or words to this effect: 'I (Fernandez) gave him (Santander) a $4,500.00 loan in cash which he (Santander) promises to pay me (Fernandez) back in a few weeks or a month or two together with $100.00 as interest for such loan.' " It is further set forth that immediately thereafter, plaintiff showed affiant the piece of paper or receipt for $4,500.00, which affiant then read. A photocopy of the piece of paper was incorporated in Mr. Hover's affidavit. Finally, Mr. Hover asserted that he moved from Torrance, California, to his now address in December 1959 and gave plaintiff his address "on paper but does not know what became of such address but that in November, 1960, said Pelayo Fernandez came to his now address and talked to affiant . . . and that if a new trial is granted to Plaintiff that affiant as a witness for Plaintiff will appear and so testify as all above stated."

(2) *Plaintiff's affidavit*: Plaintiff states that on January 31, 1957, Mr. Hover was in affiant's store and "saw affiant have a number of bundles of paper money and gave [them] to Gregorio Santander [i.e. deceased] and saw Santander go through such money and saw Santander sign his name on paper and then saw said Gregorio Santander open up his shirt front and put such money in his shirt and leave the store and then said Charles M. Hover and affiant talked about the matter and affiant showed said Hover the receipt that Santander signed for the $4,500.00. That affiant saw . . . Hover on further occasions and that sometime in the latter part of 1959 . . . Hover told affiant that he was leaving Torrance and moving to Los Angeles and gave affiant a piece of paper with an address and/or phone number where said Hover was moving to; and affiant as he then remembers or recalls put such piece of paper with said address and/or phone number in and among other affiant's papers in said Store and more or less forgot about it. . . . Affiant further says that he consulted his said attorney . . . several times prior to the first trial as set on June 1, 1960 and thereafter continued to and actually tried on June 16th, 1960, and stated to him all matters in connection with the loan and including the fact

that one Charles M. Hover was in the store when Gregorio Santander was at the time the money was given to Gregorio Santander and also saw a receipt signed which was shown to said Charles M. Hover, and affiant further stated to his said attorney that said Charles M. Hover had moved to Los Angeles but he thought he had his address there and said attorney told affiant to try and locate said Charles M. Hover and he be a witness for said affiant at the trial. Affiant thereafter and before the first trial made a personal search among all his papers and other books at his store in an endeavor to locate the piece of paper with said Hover's address on it but was unsuccessful and could not so locate it. Affiant then told his attorney that he (affiant) could not locate said address. That thereafter the first trial of said cause was had on June 16th, 1960 and judgment was in favor of this Plaintiff and affiant and a motion for a new trial was filed by Defendant and heard by the trial court and said motion was granted; that thereafter said cause was re-set for trial and was heard on November 1, 1960 by the Court and the Court orally announced judgment in favor or [sic] Defendant. Affiant further says that after the close of said trial, this affiant and his said attorney . . . talked about all matters in connection therewith and in particular the fact that the Court did not believe Plaintiff's case and the testimony therewith. Affiant's attorney . . . then suggested that affiant look everywhere for the address of said Charles M. Hover who was a witness for Plaintiff; that thereafter and on his said attorney's request this affiant again looked amongst his papers and records at his said Store and affiant then looked amongst all his papers and in his apartment . . . where he had lived for several years; and after such search so made in his apartment affiant found in a trunk the address and phone number of said Charles M. Hover in Los Angeles and since November 1, 1960; Affiant further says that he does not remember or recall that he had put such address and phone number of said Charles M. Hover in his apartment as otherwise he would have so informed his attorney and had said Charles M. Hover subpoened [sic] at both trials of this cause . . . that he first discovered said address and phone number . . . on or about November 21st, 1960 and thereafter communicated with . . . Hover; that the June, 1960 Los Angeles Telephone Book (Central Section) including Hollywood does not carry the name of said Charles M. Hover as being listed therein; further affiant did not know of any friend or any relative of . . .

Hover who would or might know the address of said . . .
Hover after he had moved from Torrance in December, 1959
. . . that on or about November 21st, 1960, he located said
address and phone number of . . . Hover and talked to him
in person as to the matters in connection with the making
of said actual cash money [loan] to Gregorio Santander in
January, 1957 and which he (Hover) remembered as being
a witness thereto; . . . that after discovering said address
of . . . Hover with his phone number, he [i.e. affiant] in-
formed his Attorney aforesaid and that said attorney there-
after communicated with said . . . Hover as affiant is so
informed; and said attorney . . . prepared the affidavot [sic]
of . . . Hover also in support of his Motion for New Trial
and which affiant has read . . . that in the deposition of . . .
[plaintiff] taken by Defendant on May 12, 1960, on page 16
line 2 and including 16 thereof is mentioned Hover incorrectly
by reporter spelt 'Hobart' as being a witness at the time that
Santander received the money and other certain details;
further that at both the first trial and last trial on November
1, 1960, said . . . [plaintiff] when testifying mentioned
'Hover' as being a witness at the time Santander received the
money; but said witness was never produced at the trials;
and that the evidence as to Hover is entirely direct and not
cumulative evidence.''

(3) *Affidavit of Mr. Kalbfleisch, plaintiff's attorney*: He
states that he ''requested of his said client the address of one
Hover who said client told affiant had been in the store when
Santander was in and had seen money in cash paid to said
Gregorio Santander and also had seen and read a receipt
signed [by] said Gregorio Santander; that thereafter . . .
[plaintiff] on more than one occasions [sic] informed affiant
that Hover had moved to Los Angeles and he (Fernandez)
could not locate his address or had misplaced same and [this
was] the reason for not having said Hover at the trial as a
witness at both the first and second trial; that after the second
trial affiant on November 1, 1960 in talking to his said client
informed him that if Hover was a witness on the above facts
the case might be different as the Court did not believe the
testimony of . . . [plaintiff] as to the money having been
given to . . . [deceased] and affiant suggested and told his
client that Plaintiff and client should look everywhere to find
out the address of said Hover and sometime later . . .
[plaintiff] came to the office of affiant and informed him that
he (Fernandez) had located both the address and phone num-

ber of said Hover. Affiant further says that he thereafter phoned said . . . Hover as to all details as to what he could and would testify to and prepared and [*sic*] affidavit of . . . Hover and which affidavit is also filed herewith and in connection with the motion for new trial.''

The substance of appellant's contention is that respondent failed to establish that he was diligent.

█ It is aptly stated in *Redwood Turkey Hatchery* v. *Meadowbrook Farms,* 152 Cal.App.2d 481, 485 [313 P.2d 146] as follows:

''[1] The rule to be applied in testing the granting of a new trial upon the ground of newly-discovered evidence is well settled. The granting or denying of a new trial rests in the discretion of the trial judge. █ [2] Though a claim of newly-discovered evidence is looked upon by the courts with distrust and with disfavor, that attitude operates in the trial courts and after that court has exercised its discretion and has granted a new trial appellate courts will leave the decision to stand unless it appears that the trial court has abused its discretion to the point that the granting of a new trial amounts to a miscarriage of justice. [3] █ We may say that ordinarily the issue of due diligence in preparation for trial, including the discovery of material evidence, raises factual issues and it is safest to abide by the ruling of the trial court upon the question of due diligence. (*Dasso* v. *Bradbury,* 39 Cal.App.2d 712 [104 P.2d 128].)''

The order is affirmed.

Wood, P. J., and Lillie, J., concurred.