[Crim. No. 4686. Third Dist. Nov. 18, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN FLORES et al., Defendants and Appellants.

John L. Briscoe, Public Defender, and Charles T. Thompson, Deputy Public Defender, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Roger E. Venturi and David L. Wasserman, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendants John Flores, Ernest Borbon and Peter Covarrubias appeal from judgment, after jury verdicts, of conviction of violations of Penal Code sections 207 (kidnapping) and 261, subdivision 4 (attempted rape by threats of violence).[1]

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Defendants Flores and Covarrubias and Ernest Borbon were charged with count I, violation of Penal Code section 207 (kidnapping); count II, violation of section 261, subdivision 3 (forcible rape); count III, violation of section 261, subdivision 4 (attempted rape by threats of violence); count IV and count V, violations of section 288a (oral copula-

## Questions Presented

1. Sufficiency of Evidence.
2. Do sentences on both counts constitute double punishment?

## Evidence

At approximately 7 p.m. on January 11, 1967, H.M. entered the parking lot of Edison High School in Stockton. She was going to the school to assist Mr. Donavan Cummings, a teacher, in coaching the debating team.

A black and white 1958 Chevrolet with defendants inside stopped alongside H.M. Defendant John Flores alighted from the car and asked H.M. if she knew a person named Rose, to which she replied in the negative. Flores then grabbed her by the arm, a struggle ensued and she was eventually forced into the car, after Flores told her he had a knife which he was willing to use. She was small and slight of stature.

H.M. was forced to lie down on the floorboard of the rear seat compartment of the car. Flores and Ernest Borbon sat on the rear seat. Richard Covarrubias drove. H.M. was told to be quiet and was again threatened with a knife. She did not recall having seen the knife at that point, but she believed defendants were armed as she had felt what she believed to be a knife on one of them when she was forced into the car.

They went to what H.M. believed to be a liquor store, where a six-pack of beer seems to have been purchased. After they left the store, they drove ''for a long time.'' While still driving, they let H.M. up from the floor. Before they parked Flores ordered her to disrobe. He renewed his threat of the knife. H.M. started to take off her clothes, but hesitated. Flores and Borbon forced her to continue and did some of the disrobing themselves. Some of her clothing was damaged during the disrobing. After she was undressed, all three defendants grabbed at her body. The car was still in motion.

They eventually stopped on some country road. Each defendant attempted to engage with her in sexual intercourse. Flores and Borbon were both unsuccessful. Covarrubias achieved some penetration. None of them climaxed. In addition, she was forced to commit an act of oral copulation on Flores. She was mauled, bitten and pinched on various parts of her back, neck, buttocks and breasts.

tion). The jury found all three guilty of the offenses charged in counts I and III and not guilty of the offenses charged in counts II, IV and V. Defendant Ernest Borbon filed a separate brief from that of the other defendants, raising substantially the same contentions.

After the attempts were completed, H.M. was forced into the trunk. Covarrubias climbed into the trunk with her and held a knife to her throat. They went to a gas station and purchased gas. They returned to a rural area, and H.M. was allowed to remove herself from the trunk. She was forced into the back seat again. Covarrubias was with her in the back seat. The other two were in the front seat. They forced her coat from her. Apparently she had nothing else on. They then bit her and bruised her. A flashlight was continually shone in her face so that she could not distinguish who was committing the perverted acts. Borbon committed an act of oral copulation. Finally, she was allowed to clothe herself.

They began riding with H.M. and Flores in the back seat and the other two in the front. Flores was holding her head down. At about 11 p.m. while on El Dorado Street, the car stopped due to a mechanical defect. Highway Patrolmen were attracted to the car because it was without lights. Once the patrol car's emergency signals were operating, Covarrubias, the driver, got out and told the officers that the transmission was stuck. Officer John Montgomery told Covarrubias that he could not leave the car on El Dorado Street. Borbon then got out of the car, and those two defendants began to push the car. Two pedestrians came over and assisted them. Flores then got out of the car and helped. At this point Officer Montgomery became curious as to the condition of the fourth person in the car whose head had come into view momentarily and disappeared. After the car was pushed around the corner, the defendants got back in. The officer approached the car and asked H.M. to identify herself. She exclaimed, "Get me away from these people. They have assaulted me." All defendants were arrested at that time. H.M. was taken to the emergency hospital where photographs were taken of her injuries and a medical examination given. The examination disclosed no evidence of trauma at or about the introitus or vagina, nor of male spermatozoa. Bruises or contusion of the upper lip, neck and buttocks were found.

Defendant Flores testified that the three defendants picked up H.M. in front of Eddy's Coffee Shop in Stockton, that she willingly entered the vehicle and that she had a prearranged date with Covarrubias. After the beer was purchased they drove to the north part of town. H.M. voluntarily consumed a small quantity of beer. After the purchase of a second six-pack of beer they drove to a remote area where she consumed a quantity of beer. Flores and Borbon got out of the car leaving Covarrubias in the car. After about 15 minutes Flores

and Borbon reentered the car and began grabbing and feeling the victim's body parts. When she became upset they desisted and suggested that she put her clothes back on, which she did. No acts of oral copulation occurred.

An acquaintance of defendants, Ray Castellano, testified that when the car was at the liquor store, he talked with H.M., who spoke in a normal fashion and said "they were riding around. . . ." She also asked him if he had a brother named Al.

Officer Montgomery testified that from what H.M. had told him he believed that she was abducted from the school parking lot although his first impression had been that it was from the parking lot at Eddy's Coffee Shop.

All defendants were found guilty of the offenses charged in counts I (kidnapping) and III (attemped rape by threats of violence).

1. *Sufficiency of Evidence.*

In contending that the evidence did not support the conviction of kidnapping, defendants rely on the apparent refusal of the jury to credit portions of H.M.'s testimony (the jury found defendants not guilty of oral copulation in spite of her testimony that it occurred). This contention is untenable. The refusal to credit all of the victim's testimony is of no import. "The jury may reject any part of a witness' testimony and give credence to other portions." (*People* v. *Harris* (1964) 231 Cal.App.2d 214, 218 [41 Cal. Rptr. 642]; *People* v. *Bodkin* (1961) 196 Cal.App.2d 412, 418 [16 Cal.Rptr. 506].)

There was clear and convincing evidence of the kidnapping. In addition to H.M.'s testimony, a student at Edison High School where she was initially abducted heard screams and saw H.M. being pulled into a 1958 Chevrolet. The speech teacher at the school confirmed that she had an appointment with him that evening. The second kidnapping occurred when she was forced to enter the automobile's trunk in the company of Covarrubias. Defendants contend that this testimony should be rejected because of the alleged physica' impossibility of placing two persons in the trunk. Defendants have not shown that this was impossible. The jury had before it the relatively small stature of the victim, photographs of the car and her soiled coat recently cleaned before the incident.

In order to reject testimony given by a victim who is believed by the jury, there must exist a physical impossibility

or its falsity must be apparent without resorting to inferences or deductions. (*People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758] ; *People* v. *Newlan* (1959) 173 Cal.App.2d 579, 582 [343 P.2d 618].) Such a situation did not exist in the case at bench.

It is contended that the evidence did not support the conviction of attempted rape by threats of violence because the ability to carry out the threats was not shown until the sexual aggression had been completed, it being contended that H.M. did not see the knife until she was forced into the trunk. There was ample evidence to support the conviction. The victim was forcefully abducted from the parking lot. She testified that she thought she then felt the blade. She, was repeatedly threatened with a knife prior to the assaults. Flores threatened to ''bash her teeth in.'' A subsequent search of the vehicle produced a knife with a fixed blade used for cutting cardboard.

*People* v. *Headlee* (1941) 18 Cal.2d 266 [115 P.2d 427], in which judgments of conviction of kidnapping for the purposes of robbery and rape were reversed, is relied upon by defendants. The court there determined that it was unreasonable that the jury believe the witness as to one act of intercourse and not the other. *Headlee* is distinguishable because of the following factors. The rape was claimed to take place in a taxicab with two persons beside the victim present yet neither of the two objected, there were significant inconsistencies in the prosecutrix's testimony as to threats with a gun and the alleged victim passed up obvious opportunities to escape.

The instant crime would have been committed even if there was no knife. The threat of one where the victim feared there was a knife would be sufficient. It is the threat of violence which puts the victim in fear that is one of the important elements of the crime. In the instant case H.M. was in a position warranting continuous fear of defendants and no opportunity for escape appeared.

Defendant Borbon further claims that his state of intoxication, as observed by the victim, made it impossible for him to form the specific intent to commit attempted rape. She testified that he appeared to be under the influence of a ''great deal of alcohol. He was pretty well intoxicated, and he could not perform any act of sexual intercourse.''

The existence of a drunken state does not preclude a finding that Borbon formed the necessary specific intent. The intoxication was merely a factor which the jury could consider in determining whether or not the intent existed. As said in *People* v. *Butler* (1962) 205 Cal.App.2d 437, 439 [23 Cal.

Rptr. 118], where intent is a necessary element of the crime charged, the weight to be accorded to evidence of intoxication and whether such intoxication precluded the accused from forming the specific intent required, are matters essentially for the determination of the trier of the facts. (Accord, *People* v. *Murphy* (1934) 1 Cal.2d 37, 40 [32 P.2d 635].)

2. *Double Punishment*.

 The more serious contention is that, in sentencing defendants for both kidnapping and forcible rape, the trial court violated the rule against double punishment prohibited in section 654 of the Penal Code, which provides, in relevant part: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one. . . ." Thus the question is whether the evidence shows a simple scheme, purpose and design to abduct H.M. for the purpose of raping her, if she did not consent, or, as contended by the Attorney General, that the court could have found that the intent of the defendants was to kidnap H.M. and then by plying her with beer persuade her to indulge voluntarily in sexual intercourse, and that the intent to force her did not arise until after she refused voluntarily to submit. In other words, was the course of criminal conduct divisible? We think not.

 Whether a course of criminal conduct is divisible, thereby giving rise to more than one act within the meaning of section 654 depends upon the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206]; *People* v. *Chapman* (1968) 261 Cal.App.2d 149, 180 [67 Cal.Rptr. 601].) The court, not the jury, determines the divisibility of the offenses for sentencing purposes. (*People* v. *Chapman, supra,* at p. 180.)

 The evidence clearly shows that the purpose the defendants had in mind in abducting H.M. was to have sexual intercourse with her, whether she consented or not. She was forced into the car under threat that a knife would be used if she did not enter. Immediately she was forced to lie down on the floorboard, told to be quiet and again threatened with the knife. After purchasing the beer they forced her to disrobe under threat of the knife, helping her in the disrobing

process, and the three grabbed at her nude body—all this before parking the car.

It is absurd to think that these actions were preliminary to asking her to voluntarily submit to intercourse. There is not one scintilla of evidence that any defendant suggested or intended to suggest that she submit voluntarily to intercourse. Therein lies a significant difference from the facts in *People* v. *Fields* (1961) 190 Cal.App.2d 515 [12 Cal.Rptr. 249]. There the evidence would support a finding that the seizing and asportation of the victim was not initially to accomplish forcible rape but with the aid of beer to persuade her to indulge the defendant's desires voluntarily. The victim testified that the defendant told her she could trust him, and the testimony of a codefendant ''would support a finding that when he and defendant first got the victim into the truck their purpose was not to commit forcible rape. . . .'' (P. 518.) Nor were the circumstances in the case at bench similar to those in *People* v. *Mistretta* (1963) 221 Cal.App.2d 42 [34 Cal.Rptr. 365], where the court held that the objectives of the kidnappers ''changed from time to time.'' (P. 45.) As said in *People* v. *Nelson* (1965) 233 Cal.App.2d 440, 446 [43 Cal.Rptr. 626], concerning the kidnapping and rape there, ''The only reasonable conclusion is that the kidnaping was part of a continuous act motivated by one objective, rape. . . .'' The so-called second kidnapping, placing her in the trunk when the defendants went to get gas, was likewise a part of the continuous act of kidnapping for rape. She was being concealed to prevent discovery. It was all a part of the same transaction.

The evidence does not support a conclusion that the intent to forcibly rape the victim arose during the auto trip. That intent existed from the very beginning.

■ At argument defendants contended that the court should have instructed on diminished capacity of defendants to commit the crimes charged. No instruction was offered on the subject. The court fully instructed on voluntary intoxication. If defendants desired an instruction on diminished capacity, they should have offered one.

■ As defendants can be punished for one of the offenses but not for both, '' [T]he appropriate procedure is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. [Citations.]'' (*People* v. *Rosenberg* (1963) 212 Cal.App.2d 773, 777 [28 Cal.Rptr. 214].)

■ The lesser offense in the instant case is the violation of section 261, subdivision 4 (attempted rape by threats of

violence). Section 264 (rape) provides that rape is punishable (with certain exceptions not applicable here) by imprisonment in the state prison not less than three years. Section 664 of the Penal Code applies to attempts and states in pertinent part that the penalty for an attempt to commit an offense in which there is no maximum sentence set by law is imprisonment in the state prison for a term of not more than 20 years.

Thus the penalty for attempted rape would be imprisonment in the state prison for not more than 20 years. On the other hand, violation of section 208 (kidnapping) is punishable by imprisonment in the state prison not less than one nor more than 25 years. Obviously, the kidnapping offense is the greater offense.

The judgment as to each defendant is reversed insofar as it imposes sentences for violations of section 261, subdivision 4, of the Penal Code (attempted rape); in all other respects each judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.