[Crim. No. 3601. Fourth Dist., Div. Two. Oct. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM K. C. FERGUSON, Defendant and Appellant.

## COUNSEL

Herbert A. Moss, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jimmie E. Tinsley, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

McCABE, P. J.—A jury found defendant guilty of three counts of rape, (Pen. Code, § 261, subd. 4), one count of committing an infamous crime, (Pen. Code, § 286), two counts of participating in acts of oral copulation, (Pen. Code, § 288a), and two counts of kidnaping, (Pen. Code, § 207), as charged in the information. The jury found defendant not guilty of one count of committing an infamous crime against nature. Two prior felony convictions were also charged. Defendant admitted one prior; an objection to the proof of the second conviction was sustained. After conviction, the trial judge sentenced defendant to the state prison, the sentences to run concurrently with one another and consecutively with a sentence defendant was then serving. Defendant appeals from the judgment of conviction.

The evidence stated most favorably to the respondent presents an unusual set of events.

Shortly after midnight on July 29, 1968, Mr. and Mrs. Jerry Miller[1] arrived at the bus depot in Santa Ana after having spent the weekend with relatives in Indio. They started walking toward their residence. While they were walking west on First Street, defendant drove up from their rear, jumped the curb of the sidewalk, and asked the Millers if they wanted a ride. They said they did not, and defendant drove away. However, he

---

[1]After a defense objection to Mrs. Miller's competency as a witness, she was questioned outside the presence and hearing of the jury, and the court found her to be a competent witness.

turned around, came back, and pulled into a filling station. Defendant got out and came around his car blocking the Millers' path. He had his hand in his coat pocket; he told the Millers that he had a gun and ordered them to get into his car; he said he was not going to rob them. The Millers got into defendant's car, with Mrs. Miller in the middle and Mr. Miller on the passenger's side of the front seat. Defendant drove. The Millers testified that they acquiesced from fear of force and violence.

The car proceeded to a spot in the middle of a block on Highland Street. Here, defendant told the Millers that he was a sex pervert and ordered them to make love while he watched. He told Mr. Miller to place his hand on his wife's vagina. Mr. Miller did so, and the Millers began kissing. The defendant told Mr. Miller to have sexual intercourse with his wife; Mr. Miller refused to do so. Defendant put his hand on Mrs. Miller's vagina, pulled her over and had sexual intercourse with her. Mr. Miller testified that defendant then placed his head in Mrs. Miller's vagina and performed an act of oral copulation. Defendant next ordered Mr. Miller to get out of the car. Mr. Miller asked why, and defendant replied that he wanted to be alone with Mrs. Miller for 15 minutes, in exchange for which he would give Mr. Miller $50. Mr. Miller objected saying he did not want the money. Defendant stated that he had a gun pointed at Mrs. Miller and would kill her if Mr. Miller did not leave. Defendant placed something hard at the back of Mrs. Miller's neck. Fearing for her life, Mrs. Miller told her husband to do as ordered. Mr. Miller got out of the car, and defendant drove away. After parking the car some distance away, he then had sexual intercourse with Mrs. Miller a second time.

Because Mrs. Miller complained of the lights from passing cars and her fear of discovery, defendant drove to an orchard and stopped between the trees. He again had sexual intercourse with Mrs. Miller, after which he attempted anal intercourse with her. This hurt Mrs. Miller and she cried. Defendant, therefore, ceased this activity. Mrs. Miller testified that it was at this time that defendant performed an act of oral copulation. Defendant told Mrs. Miller to get out of the car and they both exited the vehicle. Under orders, Mrs. Miller lay on her stomach and defendant again performed anal intercourse on her. It hurt, she cried, and defendant stopped his activity. Defendant told her to kiss his penis. She did, she testified, and defendant had an orgasm.

Defendant and Mrs. Miller returned to the car. She asked him to take her back to where Mr. Miller had been forced to leave. Defendant drove around looking for Mr. Miller until stopped by the police. Defendant was arrested; a policeman took Mrs. Miller to the hospital.

Mrs. Miller testified that she allowed defendant to do the things he did because she was frightened of him and because he said he had a gun. Mr.

Miller testified that he let defendant perform the acts on his wife because defendant said he had a gun and threatened Mrs. Miller.

After being forced out of the car, Mr. Miller looked for a house that was lighted so he could telephone the police. The police came to the house from which he called. Mr. Miller and an officer went over the route. At the service station on First Street, Mr. Miller saw defendant's car pass by and told the officer who stopped it.

Joanne Beverly Aston testified that at about 1:15 a.m. or 1:30 a.m. on July 29, 1968, Mr. Miller came to her house in Santa Ana. Mr. Miller told her he wanted to call the police which he did. Mrs. Aston testified that Mr. Miller told her that he and his wife had been forced into a car and that the abductor had made him get out of the car and leave his wife.

Officer Coscarart, a City of Santa Ana police officer, testified that he received a call to proceed to the Aston residence at approximately 1:36 a.m. Upon arriving there, he was told by Mr. Miller that his wife had been kidnaped and raped. The officer obtained a description of the car and at about 4:15 a.m. that morning Mr. Miller pointed out the car to him. The officer stopped the vehicle. Mrs. Miller and defendant were in the car.

The officer asked Mrs. Miller what had taken place, and she told him that defendant forced her to have sex with him. Mrs. Miller was holding her head and appeared to be in a state of shock.

Officer Williams took Mr. and Mrs. Miller to a medical center at about 4:15 to 4:30 a.m. He talked to the Millers about what had taken place and took and reduced to writing statements from them, which statements were part of the police department records.

Defendant testified in his own behalf. He stated that he was coming from a bar in downtown Santa Ana in the early morning hours of July 29, when Mr. Miller either tried to flag him down or made a hitchhiking motion. Defendant first went by the Millers, then decided to turn around and pick them up. He asked them if they wanted a ride, and as Mr. Miller's response was affirmative, the couple got in his car. Defendant stated he did not order the Millers to get in the car. He was not armed and in no way tried to menace them.

Defendant further testified that while he was driving, Mr. Miller pulled his wife's dress up and began playing with the inside of her leg. Defendant glanced over, and saw that Mr. Miller was watching him. Mr. Miller asked defendant if he [Ferguson] would pay to spend some time with his wife. Defendant said he only had four or five dollars. Mr. Miller asked Mrs. Miller if she would go for that amount of money. She said it was up to him, and he said he thought she should; she agreed to do so. Defendant said he wanted to be alone with Mrs. Miller and indicated he would be back in 15 to 20 minutes; Mr. Miller left the car. Defendant testified that he parked

about two or three blocks away and began having sexual intercourse with Mrs. Miller. Passing car lights shined in the window, so Mrs. Miller suggested going some place else. They drove to the orange grove and parked. They had sexual intercourse on the front seat of the car, but defendant was unable to reach a climax. Mrs. Miller asked if Ferguson would like to attempt anal intercourse which act they then commenced. However, this hurt Mrs. Miller. Defendant ceased without completing the act. Mrs. Miller then said she sometimes "kissed" Jerry (her husband). She did not orally copulate defendant, but kissed and played with his penis until he climaxed. They then got back into the car and began looking for the spot at which Mr. Miller had been left. While looking, the police stopped defendant's vehicle. Defendant testified that he never threatened Mr. or Mrs. Miller and never physically forced them to do anything.

Several allegations of error are made in this appeal: (1) defendant cannot be punished for the kidnapings, as they were part of a continuous act motivated by one objective, the illegal sex acts; (2) the trial court improperly admitted hearsay evidence in testimony from Mrs. Aston and Officer Coscarart; (3) he was denied the right to present evidence that he was telling the truth, because the court would not admit lie detector evidence; (4) the court denied him an opportunity to prove that grounds for a mistrial existed because it did not poll the jury as to whether or not one Arlene spoke to them; and (5) he was not adequately represented by the public defender.

Defendant was ordered to serve sentences on the convictions for kidnaping as well as for rape, oral copulation and infamous crime against nature. These sentences were made to run concurrently with one another. Defendant's initial contention is that imposing sentence on the kidnaping convictions violated the prohibition of Penal Code, section 654, which forbids multiple punishment for a single act which may violate more than one section of the Penal Code. Defendant's position rests upon the premise that his conduct in regard to the Millers constituted one indivisible course of conduct. ■ It has been held that Penal Code, section 654, proscribes the separate punishment of distinct acts if all the acts were part of an indivisible course of conduct. (*Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], cert.den. 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708]; *People* v. *Flores,* 267 Cal.App.2d 452 [73 Cal.Rptr. 118].) However, the question of whether the acts of which a defendant has been convicted constituted an indivisible course of conduct is primarily a factual determination, made by the trial court, on the basis of its findings concerning the defendant's intent and objective in committing the acts. (*In re Ward,* 64 Cal.2d 672 [51 Cal.Rptr. 272, 414 P.2d 400], cert.den. 385

U.S. 923 [17 L.Ed.2d 147, 87 S.Ct. 238]; *Neal* v. *State of California, supra,* 55 Cal.2d 11, cert.den. 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708]; *In re Chapman,* 43 Cal.2d 385 [273 P.2d 817]; see also *People* v. *Brown,* 49 Cal.2d 577 [320 P.2d 5]; *People* v. *Flores, supra,* 267 Cal.App.2d 452.) This determination will not be reversed on appeal unless unsupported by the evidence presented at trial.

█ In the instant case, the trial court determined that the intent and objective of the defendant were not the same at the time he initially kidnaped the Millers as it was when he committed the sexual offenses on Mrs. Miller. This finding is supported by substantial evidence. Shortly after kidnaping the Millers, defendant told them that he was a sex pervert and that he wished them to make love so that he could watch. It was only after he became unsatisfied with the couple's performance that he abandoned his pose of the interested spectator and assumed an active role in the happenings. The conclusion that defendant's intent altered during the course of his conduct is bolstered by the fact that he initially forced Mr. Miller to come with him. If his original objective had been to commit the various sexual offenses on Mrs. Miller, he would not have forced Mr. Miller into his car, particularly so as he manifested a disinclination to commit the sex offenses in the husband's presence. While defendant's acts might give rise to the finding that he contemplated a degree of audience participation *ab initio,* the opposite conclusion would appear as more probable. The determination of divisibility is sustained. █ Additionally, the sentence imposed for the kidnaping of Mr. Miller may be sustained on the theory that the victim of this crime was a different person from the victim of the sex offenses. (*In re Ford,* 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681]; *People* v. *Ridley,* 63 Cal.2d 671 [47 Cal.Rptr. 796, 408 P.2d 124].)

Defendant next contends that the trial court erred in admitting the hearsay testimony of Mrs. Aston and Officer Coscarart regarding the complaints of Mr. and Mrs. Miller on the night of the crime. We find that this testimony was properly admitted. █ The testimony of Officer Coscarart concerning Mrs. Miller's statement made immediately after her recovery from defendant's car, that defendant had forced her to have sex with him, was admissible either as a spontaneous declaration (see Evid. Code, § 1240) or as the complaint of the victim of a sex offense. (*People* v. *Burton,* 55 Cal.2d 328 [11 Cal.Rptr. 65, 359 P.2d 433]; *People* v. *Pierce,* 269 Cal.App.2d 193 [75 Cal.Rptr. 257]; *People* v. *Nash,* 261 Cal.App 2d 216 [67 Cal.Rptr. 621], cert. den. 393 U.S. 944 [21 L.Ed.2d 281, 89 S.Ct. 315].)

█ The testimony of Mrs. Aston and the officer concerning Mr.

Miller's statements is not admissible under Evidence Code, section 1240; the record on appeal contains no foundation concerning the spontaniety of declarant's statements. However, we feel that under the circumstances of this case, the testimony is admissible under the hearsay exception outlined in *People* v. *Burton, supra*. In that opinion, the Supreme Court stated: "In a case such as the present [prosecution for violation of Pen. Code, § 288], where the nonconsenting victim of a sex offense testifies to its commission, the theory of admissibility of evidence of a complaint which is consistent with her testimony and which is not a spontaneous declaration which might be excepted from the hearsay objection is this: It is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur. (*People* v. *Wilmot* (1903) 139 Cal. 103, 105 . . .; 4 Wigmore, Evidence [3d ed., 1940],§ 1135.)" While Mr. Miller was the victim of a kidnaping, he was not personally the victim of a sex-related offense within the meaning of the *Burton* exception to the hearsay rule. However, in those instances where the female victim's husband has personally witnessed the commission of the charged offenses, we believe the rationale underlying the exception outlined in *Burton* is applicable; it is natural to expect that he would complain. Thus, testimony of his complaint is admissible. The trial court committed no error in allowing the presentation of this evidence.

■ There is no evidence that a polygraph test had been made, yet defendant insists he was denied the right to present evidence of the truth of his testimony. It is useless for defendant to press this contention for the results of a polygraph test are inadmissible. (*People* v. *Jones,* 52 Cal.2d 636 [343 P.2d 577], cert. den. 361 U.S. 926 [4 L.Ed.2d 350, 80 S.Ct. 364]; see also *People* v. *King,* 266 Cal.App.2d 437 [72 Cal.Rptr. 478]; *Fernandez* v. *Security-First Nat. Bank,* 206 Cal.App.2d 676 [24 Cal.Rptr. 25].)

■ During the course of its presentation, the prosecution called one Arlene who, it was said, would testify that defendant had raped her. It was said this would be presented to establish a common scheme or design on the part of defendant. The defense challenged the admissibility of this evidence and a hearing was held in the judge's chambers. During this hearing, Arlene was left in the courtroom with the jury and bailiff. Ultimately, the trial judge determined that Arlene's testimony was inadmissible, and she was excused. She presented no testimony to the jury in open court.

At the probation and sentencing hearing, defense counsel made a motion for new trial. He stated that defendant had heard from the jail that while the court was in chambers, Arlene whispered to the jury that defendant had raped her. Counsel admitted that he had spoken to the bailiff who doubted this could have happened, but requested a continuance of the sentencing in

order to investigate the allegation. The continuance was denied, the motion for new trial was denied and defendant was sentenced. It is alleged that the trial court erred in refusing to allow additional time for the investigation of the allegation.

Initially, the grounds alleged, if proven, constituted cause for the granting of a new trial. (Pen. Code, § 1181; but see *People v. Cobb,* 45 Cal.2d 158 [287 P.2d 752]; *People v. Phelan,* 123 Cal. 551, 56 P. 424]; *People v. Aguirre,* 158 Cal.App.2d 304 [322 P.2d 478].)

At the time of the court's ruling denying a continuance and a motion for new trial, there was no substantial evidence upon which the judge could have justified acting other than he did. The vagueness of the allegations without specificity would not warrant the court to grant either motion. There was no attempt by defense counsel or defendant (who was allowed to personally address the court) to state who in the jail had told defendant the alleged facts or how that person came to know them. There was no recitation of how the defendant knew of the exact position in the courtroom of Arlene, the members of the jury or of the bailiff. The utter lack of substantiating evidence upon which the accusation rested must force the conclusion that the court's ruling was correct.

It should be noted that, assuming defendant can substantiate the facts of this allegation, he may seek relief through the petition for a writ of error *coram nobis.*

Defendant raises the usual and ever recurring contention that he was denied effective representation of legal counsel. We have perused the record to determine whether, under the pronouncement of *People v. Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], counsel's lack of diligence or competence reduced the trial to a sham or farce. ▮ The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. (*People v. Tomita,* 260 Cal.App.2d 88, 94 [86 Cal.Rptr. 739]; *People v. Hopkins,* 214 Cal.App.2d 487, 490 [29 Cal. Rptr. 636].) The proof of this inadequacy or ineffectiveness must be a demonstrable reality and not a speculative matter. (*People v. Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35], cert. den. 385 U.S. 952 [17 L.Ed.2d 229, 87 S.Ct. 332].)

We do not find that defendant's counsel was either inadequate or ineffective. The mere presentation by defendant that his trial counsel should have done certain acts does not, per se, require a finding of either lack of diligence or prove incompetency. Defendant must demonstrate that his attorney's lack of preparation in fact prejudiced his defense. No such showing has been made here.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.