Filed 12/26/25  P. v. Correa CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARTURO ARTHUR CORREA,<br><br>    Defendant and Appellant. | F088563<br><br>(Super. Ct. Nos. F21905558, F22900066)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James A. Kelley, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Arturo Arthur Correa appeals following his conviction on nine counts relating to an attack and shooting committed against his former girlfriend and her daughter. Appellant challenges the guilty finding and the consecutive sentence imposed on one of those counts, a simple kidnapping offense (Pen. Code,[1] § 207, subd. (a); count 6). For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Focusing on facts relevant to the issues in this appeal, appellant and his girlfriend had a long-term relationship that became hostile over the years. Although they lived together for long period of time, at some point several years before the relevant incident, appellant and his girlfriend ceased living together and appellant no longer had a key to his girlfriend's home. Despite this, appellant and his girlfriend maintained a relationship that involved appellant staying over at the girlfriend's home. Leading up to the relevant incident, appellant became violent with his girlfriend, at one point holding a knife to her throat and at another a gun to her chest. The two also exchanged text messages, with appellant confronting his girlfriend over alleged infidelity and his girlfriend occasionally responding to dispute the claims or tell him to stop contacting her.

On December 27, 2020, appellant showed up at his girlfriend's home in the evening and knocked on the door. When his girlfriend opened the door, appellant began telling her about money he had received and asked her to go with him to the mountains. He was wearing a holster at the time but claimed not to have a firearm. The girlfriend refused and closed the door.

Appellate then banged on the door. His girlfriend opened it and again told appellant to leave. At this point, appellant broke through a screen door and entered the home, despite his girlfriend trying to close the main door. The home itself was roughly

---

[1] Undesignated statutory references are to the Penal Code.

1,100 square feet with three bedrooms, a bathroom, and a front living room. The jury was shown photographs of the inside of the home.

Appellant's girlfriend attempted to hide behind a couch. Appellant grabbed her by her hair and dragged her down a hallway and into her bedroom. Appellant's girlfriend tried to grab onto passing doorways connecting to a bathroom and a different bedroom, but appellant forcibly pulled her further down the hall. Once he had dragged her into the bedroom, appellant shut and locked the door. The bedroom had no other exits aside from a window.

Appellant threw his girlfriend onto her bed and began talking to her about his love for her and his desire to forgive past events and start over. Appellant removed a gun from his holster and placed the gun on the bed. He sat between his girlfriend's legs, crying, and told his girlfriend to shoot him. When she refused, appellant picked up the gun, wrapped a pillow over it, and threatened to kill them both.

Appellant's girlfriend tried to leave the room, but appellant grabbed her hair, threw her to the floor, and struck her in the head with his gun. At this point, the girlfriend's daughter arrived at the home and, finding appellant's truck at the property and the front door open, ran to her mother's room, where she found the door locked, and called out to her mom. This led to a series of events where appellant fired a shot through the bedroom door, fought with his girlfriend as she attempted to protect her daughter, and eventually shot his girlfriend before fleeing—while also shooting again at the daughter. Appellant's girlfriend survived the shooting and testified at trial, as did her daughter.

Based on these events, appellant was charged with two counts of attempted murder (§ 664, 187, subd. (a); counts 1, 2), three counts of assault with firearm (§ 245, subd. (a)(2); counts 3, 4, 5), one count of simple kidnapping (§ 207, subd. (a); count 6), one count of corporal injury to a person in a dating relationship (§ 273.5, subd. (a); count 7), one count of criminal threats (§ 422; count 8), one count of shooting at an

3.

inhabited dwelling (§ 246; count 9), and one count of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 10), along with certain special allegations and aggravating factors. The prosecutor eventually dropped one count of assault with a firearm (count 5), and a jury convicted appellant of all remaining counts, finding true all special allegations put before them. In subsequent proceedings, the court found three aggravating factors to be true.

The court eventually sentenced appellant to 30 years 8 months, plus two indeterminate terms of 25 years to life, plus two indeterminate terms of life with the possibility of parole. One component of that sentence came from a term of 25 years to life on count 6, simple kidnapping, imposed consecutive to the sentences for attempted murder. At sentencing, appellant argued for the court to impose low terms on certain charges that were recommended for a stay under section 654 and to strike enhancements. In response, the court refused to strike all the enhancements on the conclusion that appellant "earned every bit of this," and specifically noted that the sentence for count 6 would be "a consecutive indeterminate term of 25 [years] to life." The court did, however, stay the sentences for counts 3 and 4 pursuant to section 654 and strike some enhancements.

This appeal timely followed.

## DISCUSSION

As noted above, in this appeal, appellant focuses on his conviction for simple kidnapping and the court's decision to impose a consecutive sentence on that count rather than staying it under section 654. We begin with the substantive challenge before considering the sentencing decision.

### *Sufficient Evidence Supports Appellant's Kidnapping Conviction*

Appellant challenges his conviction on count 6 for simple kidnapping, alleging insufficient evidence to prove his guilt. Appellant raises three points: (1) There was

4.

insufficient evidence of the physical distance appellant moved his girlfriend; (2) The actual distance was trivial to the extent it could be determined; and (3) No evidence showed appellant materially changed the environment when he moved his girlfriend from the living room into the bedroom.

*Standard of Review and Applicable Law*

"Every person who forcibly … takes … any person in this state, and carries the person into another … part of the same county, is guilty of kidnapping." (§ 207, subd. (a).) "In general, 'to prove the crime of kidnapping, the prosecution must prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance.' " (*People v. Hartland* (2020) 54 Cal.App.5th 71, 77.)

Movement for a substantial distance, referred to as the asportation element, has been interpreted to not rely merely on numerical distance, but rather to contemplate a distance that is substantial in character. (*People v. Martinez* (1999) 20 Cal.4th 225, 236–237, overruled on other grounds by *People v. Fontenot* (2019) 8 Cal.5th 57, 70.) This involves a " 'totality of the circumstances' " test that can include "such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Martinez*, at p. 237.) Further, when committed as part of an associated crime, the movement must be more than merely incidental to the commission of that crime. (*Ibid.*)

When considering a challenge to the evidence supporting a conviction, we " ' "view the evidence in a light most favorable to" ' the People, ' "and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Majors* (2004) 33 Cal.4th 321, 331.) " 'The court

5.

does not, however, limit its review to the evidence favorable to the respondent.' " (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1153.)  Rather, " ' "our task ... is twofold. First, we must resolve the issue in the light of the *whole record*—i.e., the entire picture of the defendant put before the jury—and may not limit our appraisal to isolated bits of evidence selected by the respondent.  Second, we must judge whether the evidence of each of the essential elements … is *substantial*; it is not enough for the respondent simply to point to 'some' evidence supporting the finding, for 'Not every surface conflict of evidence remains substantial in the light of other facts.' " ' " (*Ibid.*)

> *Substantial Evidence Shows Movement of a Substantial Character*

Appellant challenges the evidence presented in his case based on the distance appellant moved his girlfriend and the general nature of that movement.  With respect to distance, appellant notes that there was no direct evidence of the distance appellant moved his girlfriend and the inferential evidence was insufficient to support a conclusion that distance was anything other than trivial.

In making this argument, appellant concedes that the jury was shown pictures of the residence and informed the home was only 1,100 square feet.  And while appellant accepts that "the jury could perhaps estimate the distance" appellant moved his girlfriend, the short distance weighs in favor of finding no substantial character to the movement.

Appellant's argument does not show a lack of substantial evidence supporting the asportation requirement.  " '[U]nder current law, "no minimum distance is required to satisfy the asportation requirement," and the precise distance need not be proven.' " (*People v. Ellis* (2025) 108 Cal.App.5th 590, 598 (*Ellis*).)  Here, in addition to the images of the home and the general size, the jury also heard that appellant grabbed his girlfriend by the hair near a couch in the living room and dragged her out of that room, down a hallway, past two other doorways, and into a bedroom at the end of the hallway.

Considered in the context of distance alone, this is substantial evidence supporting a finding the movement was more than trivial.

Appellant further argues there was no substantial evidence related to the contextual factors identified in *People v. Martinez, supra*, 20 Cal.4th 225, 237 to show that any nontrivial movement which could be proven was also substantial in character. In doing so, appellant relies in part on *Ellis*, where the court found that moving a victim roughly 10 feet from a public sidewalk to the middle of a public street failed to demonstrate the movement was substantial in character because the movement did not decrease the likelihood of detection or increase the ability to commit additional crimes. (*Ellis, supra*, 108 Cal.App.5th at pp. 599–600.) Appellant also cites to other cases where substantial movement was found based in part on a movement from a public space to a private space or a from a public space to what would be inferred to be a more private space. Appellant relies on these cases to argue that appellant's girlfriend was in danger from the moment appellant entered her home, and thus any movement within the home could not materially change her environment.

We disagree and find *Ellis* distinguishable. *Ellis* involved movement from one public location to another in a manner that did not suggest a greater attempt to transport the victim an objectively large distance. (*Ellis, supra*, 108 Cal.App.5th at pp. 599–600 [full crime witnessed by patrons in a pizza parlor and general closeness to nearby train station insufficient without more to demonstrate increased risk from movement in that direction].) In this case, at the most generous to appellant, the movement involves transportation from one private area to another private area. More realistically, the movement was from a semi-private area—a living room now open to the public after a break in—to a fully private area—a bedroom at the end of a hall and behind a working and locked door. This implies that a substantial change in character could exist if supported by the facts. Even in *Ellis*, the court emphasized the lack of evidence that the

7.

second location was any more private than the first, recognizing that even movement between two public spaces could satisfy the substantial character test if the facts warranted. (*Id.* at p. 599.)

In this case, the evidence is sufficient to support the jury's finding that the movement was substantial in character. The jury was presented with evidence showing that appellant had broken into the front room of his girlfriend's home, and when she fled from his intrusion, he grabbed her by the hair, dragged her down a hallway into her bedroom, and closed and locked the door behind him. The evidence thus shows that appellant moved his victim from a place with a direct exit to a public space and other paths from which to flee to a more secure location with only a window permitting escape and a door that could be closed and locked.

The circumstances of the crime further allows for an inference that this movement allowed appellant additional time and opportunity to commit further crimes. First, when his girlfriend attempted to flee after he asked her to shoot him, she could not because the door was locked. This then allowed appellant to commit further crimes by again assaulting her and ultimately shooting her. Next, when the girlfriend's daughter arrived, the movement meant not only that she could not interrupt the incident in the bedroom but also that she had to knock on a closed door when searching for her mom, ensuring appellant had time and opportunity to fire through the door. These facts all support a finding that the movement from the living room, down the hall, and into a locked bedroom was substantial in character and thus sufficient to demonstrate asportation for kidnapping. Accordingly, we find substantial evidence supports the kidnapping conviction.

## *Consecutive Sentence for Kidnapping Was Proper*

Appellant next argues that the consecutive sentence imposed with respect to this kidnapping conviction is improper under section 654 because he could not be separately

sentenced for both a kidnapping and an attempted murder committed during that kidnapping. Relatedly, appellant contends that even if separate sentences are permissible, a remand is required for the court to expressly find this to be appropriate.

*Standard of Review and Applicable Law*

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

Section 654 thus precludes multiple punishments for a single act or omission, or an indivisible course of conduct. (*People v. Hester* (2000) 22 Cal.4th 290, 294.) Our high court held the proper test for determining " '[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208 (*Latimer*).) "Whether a course of criminal conduct violating more than one penal statute is committed with a single criminal intent or with multiple criminal objectives is ordinarily a question of fact for the trial court, whose implied finding of multiple criminal intent will be upheld if supported by substantial evidence." (*People v. Green* (1988) 200 Cal.App.3d 538, 543–544.)

Ordinarily, a section 654 claim is not waived by failing to object below. (*People v. Hester, supra*, 22 Cal.4th 290, 295.) The People concede no waiver arose from appellant's failure to specifically object to the consecutive sentence imposed in this case.

*Substantial Evidence Supports Consecutive Sentencing*

Appellant places a strong emphasis on the result in *Latimer*, where the victim was kidnapped, driven to the desert, and raped twice, but the court found that section 654 limited punishment to only the rapes, despite the kidnapping and the rapes being separate acts. (*Latimer, supra*, 5 Cal.4th at pp. 1216–1217.) Appellant's argument fails in this

9.

case, however, because it ignores a meaningful distinction from *Latimer*, evidence suggesting an intent or objective behind the kidnapping other than to facilitate the related crime.

In *Latimer*, the court justified its final decision by expressly noting, "Although the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Latimer, supra*, 5 Cal.4th at p. 1216.) There, because a plea bargain occurred before the preliminary hearing, the only evidence regarding intent was contained in a sheriff's report. That report only indicated that the defendant was driving the victim around when he decided that instead of stopping where expected, he would drive the victim into the desert and rape her. After completing the first rape, he drove her further into the desert to commit another, and then further into the desert where the victim successfully fled. (*Id.* at p. 1206.) While the evidence thus supported consecutive sentences on the two rapes, it did not demonstrate that the kidnapping was committed for an independent purpose.

In contrast, the evidence does not show in this case that appellant committed the kidnapping to facilitate the subsequent attempted murders. In fact, the evidence strongly supports finding a sequential intent to the crimes. When appellant first came to his girlfriend's home, he claimed to want their relationship to continue. He subsequently committed the kidnapping in response to her rejection and attempts to flee from him, implying his intent was to further his discussion in a place where she could not escape. In line with this inference, appellant continued to talk to his girlfriend about their relationship in the bedroom, going so far as to leave his gun accessible to her while stating she should shoot him. Only after several intervening events—where appellant's girlfriend again attempted to flee, appellant stopped her and attacked her, and her daughter interrupted by knocking on the door—did appellant appear to show an intent to kill his girlfriend's daughter, shooting through the door. He then appears to have shown

an intent to kill his girlfriend after she attacked him in defense of her daughter. In other words, the record fails in any meaningful way to imply that appellant committed a kidnapping to effectuate an attempted murder or any other immediate crime.

As substantial evidence supports the conclusion that appellant committed separate acts with independent purposes, we find no error in imposing consecutive sentences on the kidnapping and attempted murder charges.

Appellant further contends that California Rules of Court, rule 4.424[2] requires an express finding by the trial court that section 654 is inapplicable before imposing a sentence and any case law stating such a finding will be implied is improper. We do not agree. Rule 4.424 and its precursor, former rule 424, have been in existence since at least 1991. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1473.) The rule requires the court to "determine whether the proscription in section 654 against multiple punishments for the same act or omission requires a stay" before "determining whether to impose either concurrent or consecutive sentences on all counts." (Rule 4.424.)[3] However, courts have recognized and sustained the implied findings of a trial court regarding the applicability of section 654 when supported by substantial evidence since at least 1969. (See *People v. Ferguson* (1969) 1 Cal.App.3d 68, 74–75 [identifying the then-settled rule].) No aspect of rule 4.424 clearly requires express findings that section 654 is inapplicable prior to imposing a concurrent or consecutive sentence. Rather, rule 4.424's language states that such sentences can be imposed only after deciding upon section 654's applicability. Nor does the history behind rule 4.424's adoption show that an express finding requirement was ever applicable. Rather, in circumstances such as these, where the court has stayed

---

**2**      All further references to rules are to the California Rules of Court.

**3**      The precursor to former rule 424 was former rule 449. Former rule 449 generally required the sentencing court to stay execution of so much of the term as was prohibited by section 654. (See *People v. Alford, supra*, 180 Cal.App.4th at pp. 1472–1473 [discussing former rule 449 and related history].)

some counts under section 654 and imposed sentences on others, this court looks not for express findings supporting those rulings, but rather for substantial evidence supporting the sentencing decision. As noted above, such evidence exists here.

## DISPOSITION

The judgment is affirmed.


HILL, P. J.

WE CONCUR:


LEVY, J.


MEEHAN, J.