[Crim. No. 7795. Second Dist., Div. Four. Mar. 30, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HAROLD JOSEPH LEE, Defendant and Appellant.

Charles B. Johnson for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged in one count with forgery in violation of Penal Code section 470.

The information alleged two prior convictions for forgery. Defendant pleaded not guilty. Trial was by the court, trial by jury having been duly waived by defendant and all counsel. Testimony was offered by the People and defendant admitted the priors as alleged. Defendant was found guilty as charged. A probation report was ordered. Probation was denied. Defendant was sentenced to state prison for the term prescribed by law. Defendant appealed from the judgment of conviction and the order denying the motion for a new trial.

Raymond Orlich, operations manager for the Travelers Express Company, identified money order No. 13186819 and dated February 8, 1961, made payable to the order of Milton Thomas, Jr. in the amount of $71 and bearing the signature of Rose Thomas at the bottom. An "accounting copy" bearing the same serial number and the same perforations was identified as a carbon copy of the money order. These two exhibits came to the agency with a carbon paper inserted between them. Blank money orders are kept in the safe at the agency until issued. In this case the money order and its corresponding copy were issued to an agency, the Burns Liquor Store on South Central Avenue, Los Angeles. Mr. Perlman, who was in charge of the Burns Liquor Store, died the day before the preliminary hearing. The carbon copy of the money order, indicates by the perforations in the upper right hand corner that it was issued for $1.00 under the accounting procedures of the company. The company issues special checkwriting machines to its agencies. These machines stamp the agency number onto the money order at the time the money order is issued by the agency. In this case No. 444, the agency's number, was stamped on the money order when it was issued by the agency.

Emma Callendar, liquor store clerk for the Burns Liquor Store, identified the paymaster machine. This machine had been in their store continuously since the time of the offense. She testified she did not know who issued the money order referred to, but that in issuing a money order the original and the carbon are inserted into the machine. The original copy

is retained by the customer and the agency keeps the copy. Emma Callendar further testified that she is familiar with Mr. Perlman's handwriting, but that certain figures on the money order did not look like his handwriting.

George H. Smith, a police officer, testified he had searched for "Milton Thomas, Jr." and "Rose Thomas" and was unable to locate either of them. The address given for Rose Thomas was checked out, and it was determined that no one by that name had ever lived at that address.

Don M. Harding, a handwriting expert, compared the copy of the money order and found that the digit "7" as found in the "$71.00" on the money order did not appear to be the same 7 as that which was on the machine itself.

Joseph B. Oderberg of Fred's Liquor Store testified that the money order was brought to him by George Colter and another man with the request that he cash it. At this time the money order was in its present condition. He testified he refused to cash the money order and two men left in a pale green Studebaker club coupe, occupied by four people.

Frank Castillo, Jr., attendant at the Major Gas Station in Pasadena, testified defendant came to him on February 11, and asked him to cash the money order for "Milton Thomas, Jr." who accompanied defendant at that time. Castillo cashed the money order for Thomas and sold him about $3.50 worth of gas. Three dollars and fifty cents was subtracted from the $71 and defendant was handed the balance in cash. Two men were in the back seat of the car. George Colter was identified as one of the other four passengers of the automobile. Defendant was identified as the driver.

Officer George H. Smith arrested defendant on February 11, 1961, on Washington Street in Pasadena. Smith had observed the car in the service station, followed the car as it pulled out of the Major Gas Station and stopped it. Defendant was driving, with Colter seated in the right front seat. In the back seat were J. D. Douglas and Harold Thomas. Defendant was asked if the officers could search the car, to which he agreed. Defendant stated he had just been to the service station; that he had purchased gas; that Thomas had paid for the gas with cash; he denied that the money order had been cashed at the gas station.

After the search, the officers were unable to find the money order in the automobile. All four men were placed under arrest and taken back to the service station, where the officers obtained the money order. On the way to the police station defendant stated that he had received the money for the

money order but denied he knew it was forged. At the police station the officers found $50 in defendant's wallet. Defendant admitted that $42 of this money was from the money order.

In the presence of defendant, Thomas stated defendant had picked him up at the Dew-Drop Inn, where the unidentified person left the car and J. D. Douglas joined them; that they then went to the service station where they cashed the money order. Thomas also admitted that all of the persons in the car had known it was a bad money order, but this statement was not made in defendant's presence.

Defendant testified he had driven the car during this time. He denied the money order was a forgery. He stated he had previously worked at the gas station where they cashed the money order; he expected to be reemployed there; he had no knowledge that the money order was a forgery; he had $52 at the time of his arrest which he had had on his person prior to meeting the other defendants.

Defendant contends the evidence is insufficient to support the conviction in that there was no credible evidence that the money order was in fact altered.

The following statement has often been quoted: "To constitute forgery by uttering or passing a forged instrument as defined in section 470 of the Penal Code, three important factors are requisite: 1. It must be uttered, published, passed, or attempted to be passed, as true and genuine; 2. It must be known by the person uttering or passing it to be false, altered, forged, or counterfeited; 3. It must be with intent to prejudice, damage or defraud some person." (*People* v. *Hellman,* 189 Cal.App.2d 777, 778-779 [11 Cal.Rptr. 433].)

There was a discrepancy of $70 between the money order and the carbon copy of the original. This was evidence of alteration. The carbon should have been an exact copy of the original, except for the alteration. The two were inserted in the check-writing machine at the same time. The original was given to the customer and the copy retained by the agency. The trial court, by its judgment, rejected the hypothesis pointing to defendant's innocence. There is ample evidence to support the implied finding of guilt as the more reasonable of the two hypotheses.

The general rule, as stated in *People* v. *Perkins,* 8 Cal.2d 502, 519 [66 P.2d 631]: ". . . does no more than to instruct the jury that if a reasonable doubt is created in their minds for any reason they must acquit the defendant. But

where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this court is bound by the finding of the jury.''

We hold the evidence was sufficient to show the money order was in fact altered.

 Defendant also contends there was no proof that he had the specific intent to defraud. The facts heretofore recited indicate that defendant knew the other participants in the crime. Defendant received money from the altered instrument. He had $42 of the money received from the altered document in his possession at the time of his arrest. He received $3.50 worth of gas after the money order was cashed. He drove the car of the person who wrote the money order and in the car was the purported payee. There was evidence of defendant's admissions and contradictory statements. Defendant denied the money order had been cashed. Later, he admitted he had received money from the altered document.

The evidence was sufficient to support the inference that defendant was a principal in uttering and publishing the altered money order with a knowledge of its fraudulent character. Penal Code section 31 reads in part: ''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . or who, by fraud, contrivance, or force, . . . for the purpose of causing [another] to commit any crime . . . are principals in any crime so committed.'' As stated in *People* v. *Mauldin*, 181 Cal.App.2d 184, 189 [5 Cal.Rptr. 243] : ''While mere presence alone of the accused at the scene of the crime is not sufficient to make him a participant, his presence is a circumstance tending to support a finding that he is a principal.''

 In the instant case the defendant made certain admissions. The evidence shows that he actually participated in the transaction with knowledge of its fraudulent character. There was ample evidence from which the trier of fact could conclude that defendant was a principal within the definition of the statute.

There is sufficient and ample evidence to support the conclusion reached by the court below.

Judgment and order denying motion for new trial affirmed.

Burke, P. J., and Balthis, J., concurred.