[Crim. No. 8634. Second Dist., Div. Two. Oct. 9, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR RANSOM, JR., et al., Defendants and Appellants.

Grant E. Propper, under appointment by the District Court of Appeal, and Charles B. Johnson for Defendants and Appellants.

58

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendants Arthur Ransom, Jr., Rosetta Ransom (T/N Rosetta Davis)[1] and Calvin Hutchinson were charged with robbery, and that at the time of the commission of the offense they were armed with a .38-caliber revolver. Arthur Ransom and Hutchinson were each charged with a prior felony. Ransom admitted the prior. The jury found all three guilty of robbery and fixed the offense at first degree as to all defendants; also, found the charge of being armed at the time of the offense true as to Arthur Ransom and Hutchinson, but not true as to Rosetta. The offense was reduced to robbery in the second degree as to Rosetta. She was granted probation for five years on condition that she serve the first 12 months in the county jail. Ransom was sentenced to state prison. Both have appealed.[2]

On the night of April 30, 1960, Arthur Brewer, head of the planning and engineering section of the Los Angeles Community Redevelopment Agency, alighted from a bus on his way home sometime after 11 p.m. at the northeast corner of Fair Oaks and California Streets in Pasadena. He crossed to the south side of California and proceeded west on that street. When he was some 150 feet from Fair Oaks he casually observed a car—a Cadillac—pass. It was traveling west. He noticed that it stopped after crossing the railroad tracks "rather abruptly"; then made a quick turn and disappeared. Brewer continued walking westerly. As he crossed the tracks, two men suddenly came around the corner. Brewer continued walking and so did the two men—Ransom and Hutchinson—side by side. They separated so that Brewer had to come between them. As he came abreast of them, both men put their hands in his pockets. This startled Brewer who put his arms up to ward off what he thought was going to be an attack. In an attempt to get away from them, Brewer ran across the street to the north side. One of the men followed him. Brewer looked back and saw the other man with a gun in his hand pointed at him. The one who had followed him now had hold of him. When Brewer realized that his assailant had a gun, he made no more resistance. The man with the gun then came across the street. Brewer produced his billfold, and opened it. He noted four bills—two

---

[1]Referred to herein as Rosetta.
[2]Defendant Hutchinson is not involved in this appeal.

20's, one 10, and one the denomination of which he did not recall. One of the men grabbed the money and told him to "get." He ran westerly on California. He looked back and saw a man who had gotten off the bus with him coming along, and observed the two men accost him. Brewer then noticed a Cadillac headed north, parked on Drexel Street just south of California. Brewer continued running, saw a light in an apartment, aroused an occupant and notified the police. He told the police he had been robbed by two men that he believed were in a Cadillac that was gray but the street lights were garish and he could not be certain as to its color; that he thought it was a Coupe de Ville. Brewer identified Ransom and Hutchinson 25 minutes later at a police lineup.

As a result of a police radio broadcast, Sergeant McGowan moments later observed a two-tone (a dark gray over a light gray) 1951 Cadillac, a Coupe de Ville model, pass. The officer followed. The car was proceeding carefully—at about 20 miles per hour. It made the boulevard stop. Moments later the officer turned on his red light. The driver, Rosetta, pulled over to the curb and stopped quickly. Ransom and Clyde Green were in the front seat with Rosetta. Hutchinson and a man named Washington were in the rear seat. The occupants were asked to disembark. The officers located a gun under the back seat. Rosetta did not at first have on a sport jacket but some 10 or 15 minutes later, the officer observed Ransom take off his sport jacket and place it around Rosetta's shoulders.

Policewoman Houdyshell arrived at the scene a few minutes later. She gave Rosetta a cursory search—found nothing of significance. When they first entered the police van, Rosetta sat next to Ransom. The policewoman asked her to take a place in the front of the van. She paid no attention. Repeated commands were necessary to get her to move up front. On the ride to the station Rosetta sang, moved around in the seat, and made several motions into the right cup of her brassiere through a slit in the sleeve of the sweater she was wearing. The policewoman heard a crinkle each time Rosetta made these motions. She was then wearing the jacket and from time to time she would insert her hand into the armhole area of the jacket. At the station the policewoman searched Rosetta more thoroughly and found a $20 bill in the right cup of her brassiere; she also further examined the jacket and found five bills—one $20, one $10, two $5.00 and a $1.00 bill, between the lining and the fabric. Rosetta acknowledged she knew this money was there.

Clyde Green testified he came to Pasadena on the evening

in question with Ransom and Rosetta, and Hutchinson and Washington; that the gun found in the Cadillac was his; that Ransom was driving; that when they reached Pasadena, Ransom and Hutchinson left the car for a brief period; that when they returned Rosetta was at the wheel; that Ransom got in the front seat on the passenger side and told her not to drive too fast.

All defendants denied having had any part in robbing Brewer. Ransom testified his jacket was in the seat, so when they were stopped he reached in and got it and placed it around Rosetta's shoulders. Both of the Ransoms sought to account for the money that was found on them, and Rosetta sought to explain the movements of her hand into her brassiere on the way to the police station.

During the trial it developed that the Cadillac was a 1956 model rather than 1951 as the victim said he thought it was.

### ARTHUR RANSOM'S APPEAL

In seeking a reversal this appellant makes two contentions: (1) it was error to permit over objection an inquiry as to the nature of his prior conviction; and (2) it was error for the court to sustain an objection by the People to a question that called for appellant's opinion as to whether 1956 and 1951 Cadillacs are easily distinguishable. We find no merit in either of these contentions.

As to the first point counsel for Ransom notes that section 2051, Code of Civil Procedure, provides that a defendant may be asked whether he has been convicted of a felony. He then argues that since the statute does not expressly authorize inquiry into the details of the prior offense, it was improper to ask him: "What felony was that?" The established rule, however, is that it is permissible to "ask the *nature* of the crime, i.e. particular felony." (Witkin, California Evidence, § 659, p. 699; *People* v. *David*, 12 Cal.2d 639 [86 P.2d 811]; *People* v. *Romer*, 218 Cal. 449 [23 P.2d 749].) That was all that was done in this case.

The defendant testified he had been in the auto mechanic repair business and also as to differences in the body lines between a 1951 and a 1956 Cadillac Coupe de Ville. He then sought to give his opinion as to whether these two models were easily distinguishable as a basis for discounting the testimony of the victim who thought the car involved was a 1951 model. Appellant may have been competent to answer the question but it had no bearing on the competency of the victim to answer the same question. Furthermore, when the victim was shown a picture of the car in

which the defendants were apprehended and asked whether or not it "appears to be the Cadillac that you have referred to," he replied: "Yes. That is the same kind of car." Thus even though the victim was mistaken in his estimate of the age of the Cadillac, he identified a picture of the car itself as being the same kind of car that he saw. The relevant issue here was as to recognition and identification of the car by the victim. There was plainly no error in the court's ruling.

## ROSETTA'S APPEAL

Her sole contention is that she did not abet the other defendants in the perpetration of the robbery.[3] More specifically she argues: There is no evidence which showed (1) that "Rosetta had knowledge of the wrongful purpose of the other defendants when they left the car on the evening in question"; (2) that "Rosetta knew what the other defendants had done when she drove the car from the scene of the robbery"; and (3) that "Rosetta knew of the existence of the money in the coat [or jacket between the lining and outer fabric] prior to it being found there by Mrs. Houdyshell" [the policewoman].

Pertinent here is the observation of the court in *People* v. *Martin*, 12 Cal.2d 466 [85 P.2d 880]. At page 472, the court stated: ". . . the existence of such knowledge or intent need not be directly or positively proven, but may be inferred from circumstances. And whether or not the alleged aider and abetter knew and shared the principal's criminal intent is a question of fact for the jury to be inferred from circumstances." Of course we must assume in favor of the judgment every legitimate inference that reasonably may be drawn from the evidence.

Applying these principles to the evidence that we delineated earlier in this opinion it is quite apparent, without discussing the significance of the various segments of the evidence, that the trier of fact could properly find Rosetta guilty not only of aiding the other defendants in the commission of the robbery (which she admits is established by the evidence) but also of abetting them in the perpetration of the offense. Thus under section 31, Penal Code, she was guilty as a principal.

The judgment as to each defendant is affirmed.

Ashburn, J., and Herndon, J., concurred.

---

[3]The brief of this appellant concedes that the People proved that Rosetta did aid the other defendants in the perpetration of the alleged robbery.