[Crim. No. 15198. Second Dist., Div. Five. Mar. 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MORELAND et al., Defendants and Appellants.

**COUNSEL**

Albert D. Silverman, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Robert T. Jacobs and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUS, P. J.**—By information defendants Moore and Moreland were accused, in counts I and II, of kidnaping for the purpose of robbery (Pen. Code, § 209), in counts III, IV and V of attempted robbery (Pen. Code, § 664) and in count VI of burglary (Pen., Code § 459). In count VII defendant Moreland was accused of possession of heroin (Health & Saf. Code, § 11500). Both defendants were charged with being armed at the time of all of the alleged offenses and arrests.

Defendant Moore was charged with one prior felony conviction, defendant Moreland with three.

Both defendants pleaded not guilty, denied the priors and waived jury trial. They were found guilty of kidnaping (Pen. Code, § 207), a lesser, necessarily included offense to that charged in counts I and II. Defendant Moreland was also found guilty on count VII. Both defendants were found to have been armed at the time of the offenses of which they were convicted as well as at the time of their arrest. The prior convictions were found to be true. Each defendant was found not guilty of counts III, IV, V and VI.

Defendants' motions for new trials were denied. Probation was denied and defendants were sentenced to state prison.

### FACTS

At about 7 or 7:30 p.m. on September 24, 1967, Louis Austin, having just finished washing his car, was standing in his driveway with his friend Raymond Bell. Another friend, Freeman Williams, was sitting slouched down in the front seat of his own car which was parked across Austin's driveway. Defendants approached Austin and Bell and pulled guns. Moreland pointed his gun at Austin, announced that he and Moore were police officers and ordered Austin and Bell to go into the house. Once inside Austin and Bell were ordered to lie on a bedroom floor. Mrs. Austin was ordered to lie on a bed in the same room. All three complied. Both defendants were holding guns.

Williams, who had slumped down even further when he saw defendant's drawn guns, waited until the four men had gone into the house, then ran across the street and phoned the police.

Austin, his wife, and Bell testified that inside the house Moreland demanded money from Austin. Austin told him he had only $7. Moreland did not take it but repeated his demand for money, indicating a belief that there was more money in the house and threatening Austin with bodily harm if Austin failed to reveal its whereabouts and Moreland later found it. Moreland left the bedroom. Austin heard sounds like drawers being opened and objects being moved. Moore remained in the bedroom holding a gun.

Defendants had been in Austin's house about 15 minutes when the police arrived. Officer Ross stationed himself on the east side of the residence; Officer Phillips went to the west side. Moreland exited through a window on the east side of the Austin residence. Moore was right behind

him. He stepped on the windowsill but when he saw Officer Ross, he jumped back into the residence.

Moreland was placed under arrest by Ross who found a fully loaded and cocked revolver in his right front pants pocket. A few minutes later Moore came out of the kitchen window on the west side of the house. As soon as he hit the ground, he stood up and threw a revolver back through the window. Moore was arrested by Phillips. When additional police assistance arrived shortly thereafter, Phillips entered the Austin house and retrieved the revolver which he found in the kitchen sink immediately below the window through which Moore had emerged.

During booking procedure, a white balloon containing heroin was found in Moreland's left front pants pocket.

After defendants were arrested Austin found his television set had been unplugged and moved from its stand to a couch and that some of the dresser drawers in a rear bedroom had been pulled out. No money was taken from the Austins, Bell, or from the residence.

As a defense to the charges against them, defendants offered the following explanation: they claimed that Austin was a narcotics dealer, that he was supplying a lady friend of theirs who was an addict and taking her earnings from prostitution in payment, that she was frightened of him, and that they went to see Austin to persuade him to leave the woman alone—to rough him up, if necessary. They contended that when they arrived at Austin's home they were unarmed and that they took the weapons found in their possession from Austin and Bell. They further claimed that Austin invited them into the house so that his dealings in narcotics would not be discussed in the street. Moreland claimed that he had picked up the heroin found in his possesion at the time of his arrest from the floor of Austin's home just after an attempt by Mrs. Austin to destroy her husband's cache of drugs, and that he placed it in his pocket absentmindedly not really knowing what he intended to do with it.

### Conviction Under Penal Code Section 207

The trial judge chose to believe neither the defendants' nor the victims' version of the facts. Instead he drew the permissible inference that defendants' purpose in going to Austin's home was to steal heroin from Austin. He further found that for this purpose defendants armed themselves in advance and ordered Austin and Bell into the house when they met them in the driveway of the Austin home. This movement formed the basis for the convictions of kidnaping. ■ Defendants were acquitted of the more serious offense, section 209 of the Penal Code, as well as of the

burglary and attempted robbery charges, because of the trial court's belief that heroin could not be the subject of theft.

This entirely erroneous notion was injected into the proceedings during the cross-examination of Moore who had just been asked whether he would have stolen a narcotic, had he found it. At that point the court interrupted, asking: "Can you steal narcotics?" It stated that unless the prosecutor could produce authority to the contrary, it would rule that contraband could not be the subject of theft. Although there was a noon recess before the conclusion of the trial, no one ever cited *People* v. *Odenwald,* 104 Cal.App. 203 [285 P. 406, 286 P. 161] or *People* v. *Walker,* 33 Cal.App.2d 18 [90 P.2d 854], to the court, cases which hold that contraband liquor and illegal slot machines, respectively, could be the subject of theft. The court, therefore, stuck to its doubt and held, eventually, that defendants did not kidnap for the purpose of robbery, that they did not attempt to commit robbery and that the entry into the home of the victims was not burglarious. This left just simple kidnaping and Moreland's possession of heroin.

Our main task is to examine the effect of *People* v. *Daniels,* 71 Cal.2d 1119, 1126-1140 [80 Cal.Rptr. 897, 459 P.2d 225], on the defendants' convictions for kidnaping. *Daniels* held that movements of robbery victims which "are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and *above that* necessarily present in the crime of robbery itself" are not punishable under section 209 of the Penal Code. (*People* v. *Daniels,* 71 Cal.2d at p. 1139 [80 Cal.Rptr. 897, 459 P.2d 225]. Italics added.)

■ Although the trial in the case at bar was held before *Daniels* was filed, the rule of that case applies to pending appeals. (*People* v. *Ramirez,* 2 Cal.App.3d 345, 355 [82 Cal.Rptr. 665]; *People* v. *Ross,* 276 Cal. App.2d 729, 736-737 [81 Cal.Rptr. 296].)

One is, of course, tempted to say that since defendants obtained the benefit of the erroneous ruling that contraband could not be the subject of theft, they cannot be heard to claim that the movement of the victims was merely incidental to an intended criminal asportation. Such reasoning, however, loses sight of the fact that the erroneous ruling was not one which defendants sought. As far as the charge of kidnaping is concerned,

the defense was a complete denial, not an effort to reduce the charge under section 209 of the Penal Code, to a conviction under 207.[1]

Indeed, the People make no such contention. Their argument concerning the nonapplicability of *Daniels* focuses entirely on the ultimate holding of that case that "the brief movements which defendants Daniels and Simmons compelled their victims to perform in furtherance of robbery were merely incidental to that crime and *did not substantially increase the risk of harm otherwise present."* (71 Cal.2d at p. 1140. Italics added.) The People argue, with some plausibility, that moving the victims from the front lawn, the public nature of which afforded "a measure of protection against violence which was lost within the privacy of the house," did substantially increase the risk. (Compare *People* v. *Wilson,* 1 Cal.3d 431, 440-441 [82 Cal.Rptr. 494, 462 P.2d 22].)

We have no reason to disagree with the test suggested by the People. Nevertheless we feel uneasy about affirming these convictions on a rationale never tested in the trial court. ■ The question whether under particular circumstances the forcible movement of the victim substantially increases the risk of harm otherwise present, is primarily a factual one. Evidence totally irrelevant under the rule of *People* v. *Wein,* 50 Cal.2d 383, 399-400 [326 P.2d 457], disapproved in *Daniels,* may acquire great significance under the new test. The convictions for kidnaping should therefore be reversed for a retrial on those charges.

It is suggested that even if the movement of the victims was not kidnaping in the *Daniels* sense it certainly was false imprisonment, in that their personal liberty was unlawfully violated. (Pen. Code, § 236.) Although no case in this state appears to have held that the offense of false imprisonment is necessarily included in kidnaping, we may assume that to be the case. (See 1 Am.Jur.2d, Abduction and Kidnapping, § 1, fns. 6-9.)

There are, however, several problems with the suggestion. First, much of the reasoning which supports *Daniels,* would also negative the possibility that a false imprisonment which is merely incidental to some other crime,

---

[1] If the erroneous ruling that heroin could not be the subject of theft had been made at defendants' urging, we could say that in law, if not in fact, the victims were forceably moved into the house "just for the sake of moving" them. (*People* v. *Daniels,* 71 Cal.2d at p. 1119 [80 Cal.Rptr. 897, 459 P.2d 225].) We would then be confronted with the problem whether a movement, which as far as its extent is concerned, would usually be merely incidental to some other crime, might nevertheless be adequate to constitute simple kidnaping (Pen. Code, § 207) if the victim has not been moved for a criminal purpose. It would unnecessarily lengthen this opinion if we attempted to demonstrate that *Daniels* leaves that question open.

is a separate offense. Second, we doubt that the People wish to settle for a misdemeanor conviction at this time, since it would necessarily bar any further felony prosecution for kidnaping. (Pen. Code, § 1023.) The possibility of a conviction for false imprisonment should be canvassed at the retrial on counts I and II.

### MORELAND'S CONVICTION UNDER HEALTH AND SAFETY CODE SECTION 11500

 Counsel claims that Moreland's possession of the balloon containing the heroin was not the kind of possession aimed at by the statute. Counsel bases this argument on Moreland's testimony that he pocketed the balloon absentmindedly. The statute, of course, does not exempt absentminded possession, provided knowledge, dominion and control are present. Moreland's version of the facts clearly establishes that he knew what the balloon contained and furthermore that he intended to exercise dominion and control over it vis-a-vis its probable owner, Austin. The only manner in which the possession might be categorized as "absentminded" is that, according to Moreland's testimony, he had not decided what future use he was going to make of the heroin.

Nor was the trial court obliged to believe that Moreland acted absentmindedly in pocketing the balloon. It was free to infer, as it apparently did, that Mooreland's purpose in going to the location was to obtain narcotics. The evidence amply supports Moreland's conviction under count VII.

### RIGHT TO A PUBLIC TRIAL

At the commencement of the defense case counsel for Moore represented to the court that defendants wished to call a witness by the name of Fisher who would testify that he had purchased heroin from Austin, but that Fisher, who was awaiting trial on other charges, was afraid for his own safety. Counsel therefore moved to have the courtroom closed during Fisher's testimony. The court invited objections. None came from Moreland, but the People objected; however the prosecutor admitted that he did not believe the People would be prejudiced by the procedure, and the motion was granted. Both defendants, through their respective counsel, waived their right to a public trial for this limited purpose. Spectators were ordered from the courtroom until notified they might return.

Fisher was sworn as a witness but before any testimony was taken from him the court ruled that, in view of the charges pending against him, it would not permit him to be examined unless his counsel were present. Fisher was then temporarily excused and defendant Moreland called to the stand. Examination of Moreland commences on page 314 of the reporter's

transcript. No one mentioned the subject of reopening the courtroom to the public until page 319 of the reporter's transcript, at which time the court itself raised the matter and directed the bailiff to advise the spectators, who were relatives of the defendants, that the courtroom was no longer closed to them. Counsel for Moreland apologized to the court, presumably for not having brought up the matter sooner.

■ Now Moreland, in a supplemental brief filed in propria persona, claims that his constitutional right to a public trial was violated. He contends that the right to a public trial is on the same footing as the right to counsel and to trial by jury that any waiver of such right must be made personally by the defendant, and that where the right is violated prejudice is automatic and need not be demonstrated. He cites *People v. Byrnes,* 84 Cal.App.2d 72 [190 P.2d 290], which supports his argument with respect to the matter of prejudice "where the defendant has demanded and been refused a public trial." (84 Cal.App.2d at p. 80.) Here, of course, not only did defendant Moreland not make such a demand, but the courtroom was closed at the request of counsel for the codefendant, and Moreland's counsel expressly waived the right to public trial for his client and failed to request that the courtroom be reopened immediately. The waiver did not have to be made by defendant personally and was effective. (*People v. Hines,* 61 Cal.2d 164, 172 [37 Cal.Rptr. 622, 390 P.2d 398]; *People v. Cash,* 52 Cal.2d 841, 846 [345 P.2d 462].) Defendant's right to a public trial was not infringed.

The judgment is reversed with respect to counts I and II and affirmed with respect to count VII.

Stephens, J., and Reppy, J., concurred.

The petitions for a rehearing were denied April 14, 1970, and the petitions of appellant Moreland and the respondent for a hearing by the Supreme Court were denied May 15, 1970.