[Crim. No. 8683. First Dist., Div. One. June 10, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS LASTER, Defendant and Appellant.

## COUNSEL

William Ray Hawes, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Defendant has appealed from a judgment which has subjected him to consecutive sentences in state prison for forcible rape in violation of subdivision 3 of section 261 of the Penal Code, kidnaping in violation of section 207, robbery in violation of section 211, and assault by means likely to produce great bodily injury in violation of subdivision (a) of section 245. Judgment was pronounced following a jury trial in which verdicts were returned finding him guilty of each offense.

He makes the following contentions: (1) that all of the convictions should be reversed because his constitutional right to a public trial by an impartial jury was not safeguarded by either court or counsel; (2) that his conviction of robbery should be reversed because there is no evidence that he aided or abetted the commission of the crime of robbery; (3) that his conviction of kidnaping should be reversed because the trial court refused to instruct the jury correctly concerning the element of asportation; and (4) that the court violated the provisions of section 654 of the Penal Code in imposing multiple sentences for offenses which constituted an indivisible course of conduct.

For the reasons set forth below it is concluded that the defendant's convictions must be affirmed, but that proscriptions against multiple punish-

ment require that the sentences for other than forcible rape and robbery should be set aside.

The offenses involved in this and a companion case (People v. Charles, 1 Crim. 8684) arose out of the following common facts to which the victim testified at each trial.

On July 21, 1969 about 12:30 a.m. the victim, an 18-year-old girl, was driving alone from Boonville toward her home on the Boonville-Ukiah road. As she left Boonville she passed a car which subsequently overtook and passed her. Thereafter as she approached a curve in the road she noticed a man, whom she subsequently identified as Charles, hitchhiking. She continued around the curve and found the car which had passed her stopped crossways in the road blocking her way.

After she stopped, Charles and one of two men who were in the car approached her. They said they were having car trouble. An attempt to start the other car by pushing it with the victim's car was unsuccessful. Charles got into the back seat of her car and the second man, identified as Shawgo, entered the front seat with the victim. She suggested that they get out while she went to call a tow truck, but they refused.

The victim started driving back to Boonville. While she was driving Shawgo reached over and turned off the ignition and Charles seized her in a chokehold and forced her to stop the car. At or about this time Shawgo reached in her purse and removed something. (Other testimony established that a dollar she had when she left Boonville was missing from her purse after the incident.)

The car which had been blocking the road approached from the rear and stopped. Charles released the victim and left her car to talk to the third man in the other car. Although the victim was unable to identify this third man, it was admitted in defendant's opening statement that appellant Laster had been with Charles and Shawgo, and he subsequently so testified. The victim attempted to escape by running down the road, but the men pursued her and she was caught by Charles. When she screamed he hit her about the face several times. He pushed her into the back seat of her car. There he struck her several more times and removed her clothing.

Shawgo drove the victim's car back towards Ukiah about four miles to a gate at the roadside. The car was used to force open the gate and something went wrong with it. They left the car, and as an automobile passed on the road, her abductors ran and the victim was dragged along the ground by Charles.

There, off the road, Shawgo and Laster had sexual intercourse with her,

while Charles just stood around. Thereafter her car was started, her abductors released her and drove off in the other car, and she drove to her home, where she arrived about 5:30 a.m.

Medical examination conducted that morning showed that her injuries due to the beating, dragging, and forced intercourse were severe.

Other facts are discussed in connection with the legal issues to which they pertain.

I

Defendant did not move for a change of venue under section 1033 of the Penal Code. The record fails to show that the jurors who heard the case had been exposed to unfavorable extrajudicial publicity. Nor does the record show that any such publicity in fact existed.

In his brief defendant sets forth what he alleges to be accounts of the crime which appeared in a local paper, as follows: July 21, 1969, an account by the victim without naming the accused; July 22, 1969, a narration of the arrest of the defendant and Shawgo; July 23, 1969, the victim's story without naming the accused; and on August 14, 1969, a similar account. Meanwhile the defendant Charles was arrested and brought to trial. Defendant refers to three alleged articles, November 6, 1969, November 7, 1969, and November 10, 1969, in which he was linked with Charles in accounts of the latter's trial and conviction. ■■ Defendant contends that the foregoing publicity, and the lingering effect of the *Maine* case (see *Maine* v. *Superior Court* (1968) 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372]), which involved a sensational crime in the same community, precluded his receiving a fair trial at a time only 10 days after Charles' conviction.

In the absence of anything in the record concerning the adverse publicity, the matter is not properly before this court on appeal. Matters in the appellant's brief which are outside the record may not be considered on appeal. (*People* v. *Richardson* (1968) 258 Cal.App.2d 23, 28 [65 Cal.Rptr. 487]; *People* v. *Walker* (1967) 247 Cal.App.2d 554, 563 [55 Cal.Rptr. 726] [cert. den. 389 U.S. 824 (19 L.Ed.2d 77, 88 S.Ct. 60)].) The statement by the court in *People* v. *Byers* (1970) 10 Cal.App.3d 410, 415 [88 Cal.Rptr. 886], that newspaper articles could not be considered when there is no showing of the date and source of their publication does not inferentially change the foregoing rule. In *Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507], the publicity complained of was incorporated in the record of collateral proceedings (see 384 U.S. at p. 335 [16 L.Ed.2d at p. 604-605]). In *Maine* v. *Superior Court, supra,* 68 Cal.2d 375, the offensive matter was in the record of proceedings for a

change of venue (see 68 Cal.2d at pp. 384-388. See also *Irvin* v. *Dowd* (1960) 366 U.S. 717, 720 [6 L.Ed.2d 751, 754-755, 81 S.Ct. 1639]).

Moreover, when the defendant has failed to move for a change of venue he cannot, thereafter, rely on pretrial publicity as a grounds for setting aside his conviction. (*People* v. *Cook* (1952) 39 Cal.2d 496, 499 [247 P.2d 567]; *People* v. *Richardson, supra,* 258 Cal.App.2d 23, 29; *People* v. *Walker, supra,* 247 Cal.App.2d 554, 563.)

█ Defendant further suggests that he was denied the effective assistance of counsel because his attorney, with knowledge of the foregoing publicity, failed to move for a change of venue. (See *People* v. *Ibarra* (1963) 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487].) Here again the record is insufficient to permit consideration of that point. Moreover, consideration of all the extrinsic matter incorporated in defendant's opening brief reveals the following statement by defendant's trial counsel: "With respect to the question you raised as to the place of trial, we were able to eliminate, through voir dire those people who had such a knowledge of the case that they would not be impartial jurors and by using all the peremptory challenges I eliminated the people whom I felt might have knowledge from the newspaper or radio even though they would not admit it. The foreman of the jury was actually a close personal friend of mine for many years, Les Larson, manager of the Bank of America at Fort Bragg and about as fair minded an individual as I have ever known. I believe that within my memo in re sentencing you will find the basic authorities upon which an appeal could be founded. . . ." Since, as appears below, defendant Laster did not deny that the offenses alleged were committed, but merely denied his complicity in their commission, it may be said that the decision to try the case locally and attempt to shift the blame to his companions was a tactical one.

Defendant has failed to show that he was denied a fair trial by reason of unfavorable publicity, either as a matter of fact, or as a matter of law.

## II

█ As appears above, the robbery occurred when Shawgo took a dollar from the victim's purse shortly after he and Charles forced her to stop her car. Defendant Laster testified that although he was aware his friends had entered another car when his car had died, he was not aware that there was a girl in the other car, or that she had been subjected to the acts preceding the last stop by the gate in the road. He testified that he merely followed the other car up to that point, and there, off the road he first met the victim and had intercourse with her with her consent and her enjoyment. Defendant also points out that an original charge of kidnaping with

intent to commit robbery in violation of section 209 of the Penal Code was reduced to simple kidnaping by amendment of the information prior to trial.

On the other hand, it could be inferred that the three accused intentionally blocked the road for the purpose of accomplishing either a robbery or rape, or both, and that the car driven by defendant was at all times operable. The victim testified that after she was first recaptured and placed in the back of her own car, Shawgo backed into a ditch and the defendant Laster pushed with his car to get her car out of the ditch. She also testified that he joined Charles and herself on the back seat of her car, somewhere along the drive back toward Ukiah to the gate by the side of the road. The defendant admitted that he later conversed with Shawgo about a check the latter had taken from the victim which revealed her identity.

■ Section 31 of the Penal Code provides in part, "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."

Defendant points out that there must be some evidence to show that the alleged aider or abettor had some knowledge that a crime was to be committed (see *Lavine* v. *Superior Court* (1965) 238 Cal.App.2d 540, 544 [48 Cal.Rptr. 8]; *People* v. *Lewis* (1952) 113 Cal.App.2d 468, 470 [248 P.2d 461]; *People* v. *Johnson* (1950) 99 Cal.App.2d 717, 733 [222 P.2d 335]; and *People* v. *Hill* (1946) 77 Cal.App.2d 287, 294 [175 P.2d 45]), and evidence to show that there was some affirmative action or an omission to act by the alleged confederate (see *Lavine* v. *Superior Court, supra,* 238 Cal.App.2d 540, 543; and *People* v. *Weber* (1948) 84 Cal.App.2d 126, 130-131 [190 P.2d 46]).

On the other hand, while mere presence at the scene of an offense is not sufficient in itself to sustain a conviction, it is a circumstance which will tend to support a finding that an accused was a principal. (See *People* v. *Durham* (1969) 70 Cal.2d 171, 180-181 [74 Cal.Rptr. 262, 449 P.2d 198] [cert. den. 395 U.S. 968 (23 L.Ed.2d 755, 89 S.Ct. 2116)]; *People* v. *Lee* (1962) 202 Cal.App.2d 36, 40 [20 Cal.Rptr. 360] and *People* v. *Carlson* (1960) 177 Cal.App.2d 201, 205-207 [2 Cal.Rptr. 117].) It is a circumstance to consider together with the accused's companionship and his conduct before and after the offense. (See *People* v. *Stadnick* (1962) 207 Cal.App.2d 767, 771-772 [25 Cal.Rptr. 30, 99 A.L.R.2d 766]; *People* v. *Moore* (1953) 120 Cal.App.2d 303, 306-307 [260 P.2d 1011]; and *People* v. *Hughes* (1945) 70 Cal.App.2d 457, 461 [161 P.2d 28].)

■ The intent may be inferred from all of the circumstances (*People v. Ransom* (1963) 221 Cal.App.2d 57, 61 [34 Cal.Rptr. 302]). The finding implicit in the verdict of the jury cannot be set aside by this court if it is sustained by a reasonable inference (*People v. Newland* (1940) 15 Cal.2d 678, 680-684 [104 P.2d 778]. See also *People v. Ransom, supra,* 221 Cal.App.2d 57, 61; *People v. Jordan* (1962) 204 Cal.App.2d 782, 787-789 [22 Cal.Rptr. 731]; *People v. Ellhamer* (1962) 199 Cal.App.2d 777, 780-781 [18 Cal.Rptr. 905]; *People v. Turner* (1948) 86 Cal.App.2d 791, 802-803 [195 P.2d 809]; and cf. *People v. Hall* (1964) 62 Cal.2d 104, 109-110 [41 Cal.Rptr. 284, 396 P.2d 700]).

"Appellant's statement that he did not know that a crime was to be committed is not sufficient to constitute irrebuttable proof of such fact. 'Few criminals would ever be convicted if their explanations were accepted as gospel truth.' (*People v. Hall,* 87 Cal.App. 634 . . .)" (*People v. Jaggers* (1932) 120 Cal.App. 733, 735 [8 P.2d 206].)

· ■ Here the jury could properly infer from all of the circumstances that the three accused purposely blocked the road with the intent to rob and rape the victim.

### III

■ The case was submitted to the jury seven weeks after the decision in *People v. Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225]. On the authority of that case the defendant submitted an instruction reading as follows: "If you should find that [the victim] was forcibly moved any distance for the purpose of committing a rape upon her person or if you should find that the forcible removal of [the victim] was a part of a rape committed upon her, then I instruct you that if you would otherwise find the defendant guilty of Count Two of the information which charges the crime of kidnaping, and if you should find him guilty of forcible rape as set forth in Count One of the information then you must find him not guilty of the crime of kidnaping."[1] This instruction was refused by the court with the following comment, "The facts of the case as shown by the evidence do not warrant giving the proposed instruction."

At the request of the prosecution the court instructed the jury in the language of CALJIC (rev. ed. 1958) Instruction Numbers 651 and 652 as follows: "Every person who unlawfully and forcibly steals, takes, or arrests any other person in this state, and carries him into another country, state or county, or into another part of the same county, doing so against

---

[1]Cf. CALJIC (3d ed. 1970) No. 9.20 and No. 9.23 alternatively third and fourth paragraphs.

the will and without consent of the person so carried, is guilty of kidnaping, sometimes referred to as simple kidnaping.

"To constitute the crime of simple kidnaping as charged in Count Two of the indictment, there must be a carrying, or otherwise forcibly moving, for some distance of the person who, against his will, is stolen or taken into the custody or control of another person, but the law does not require that the one thus stolen or taken be carried or moved a long distance or any particular distance." (See also Pen. Code, § 207.)

In *People* v. *Daniels, supra,* the court made the following principle clear, "Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation 'into another part of the same county.' (Pen. Code, § 207.)" (71 Cal.2d at p. 1140. See also *People* v. *Mutch* (1971) 4 Cal.3d 389, 398-399 [93 Cal.Rptr. 721, 482 P.2d 633]; *People* v. *Adame* (1971) 4 Cal.3d 417, 418 [93 Cal.Rptr. 740, 482 P.2d 652]; *People* v. *Ungrad* (1971) 4 Cal.3d 420, 421 [93 Cal.Rptr. 741, 482 P.2d 653]; *People* v. *Killean* (1971) 4 Cal.3d 423, 424 [93 Cal.Rptr. 742, 482 P.2d 654]; *People* v. *Smith* (1971) 4 Cal.3d 426, 427 [93 Cal.Rptr. 743, 482 P.2d 655]; *People* v. *Adams* (1971) 4 Cal.3d 429, 430 [93 Cal.Rptr. 745, 482 P.2d 657]; *People* v. *Hunter* (1971) 4 Cal.3d 432, 433 [93 Cal. Rptr. 746, 482 P.2d 658]; *People* v. *Coleman* (1971) 4 Cal.3d 436, 437 [93 Cal.Rptr. 748, 482 P.2d 660]; *People* v. *Norman* (1971) 4 Cal.3d 439, 440 [93 Cal.Rptr. 749, 482 P.2d 661]; *People* v. *Morrison* (1971) 4 Cal.3d 442, 443 [93 Cal.Rptr. 751, 482 P.2d 663]; *People* v. *Williams* (1970) 2 Cal.3d 894, 901 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Lynch* (1971) 14 Cal.App.3d 602, 608 [92 Cal.Rptr. 411]; *People* v. *Miller* (1970) 12 Cal.App.3d 922, 933 [91 Cal.Rptr. 97] [hg. den.]; *People* v. *Shirley* (1970) 10 Cal.App.3d 268, 271 [88 Cal.Rptr. 853]; *People* v. *Cheffen* (1969) 2 Cal.App.3d 638, 640-641 [82 Cal.Rptr. 658]; and *People* v. *Ramirez* (1969) 2 Cal.App.3d 345, 356 [82 Cal.Rptr. 665].)

The evidence showed that the victim was held by her abductors for a substantial portion of the time between 12:30 and 5:30 a.m., and that she was transported about a mile and a half or two miles to the point where she attempted to escape, and back about five miles to the gate where she was dragged about 40 feet off the road.[2] It is, therefore, obvious that the defendant was not prejudiced by the instruction given on the basis that the asportation was not substantial. (See *People* v. *Lynch, supra,* 14 Cal.App.3d 602, 607-609; *People* v. *Miller, supra,* 12 Cal.App.3d 922,

---

[2]At the Charles hearing (1 Crim. 8684) the victim testified that she had been transported about four miles from where her abductors had stopped her car. From mileposts in pictures identified by the victim in that case, the distances have been computed as 3.45 miles toward Boonville, and back 5.99 miles toward Ukiah, or a total of 9.44 miles.

932-934; *People* v. *Shirley, supra,* 10 Cal.App.3d 268, 271-275; and *People* v. *Ramirez, supra,* 2 Cal.App.3d 345, 354-357. Cf. *People* v. *Ellis* (1971) 15 Cal.App.3d 66, 74 [92 Cal.Rptr. 907]; *People* v. *Anthony* (1970) 7 Cal.App.3d 751, 765-767 [86 Cal.Rptr. 761]; *People* v. *Moreland* (1970) 5 Cal.App.3d 588, 594 [85 Cal.Rptr. 215]; *People* v. *Schafer* (1970) 4 Cal.App.3d 554, 560-561 [84 Cal.Rptr. 464]; and *People* v. *Chavez* (1970) 4 Cal.App.3d 832, 839 [84 Cal.Rptr. 783].)

· The principles of *People* v. *Daniels, supra,* were pronounced in connection with the aggravated offense of kidnaping to commit robbery in violation of section 209 of the Penal Code. Nevertheless, it is generally said that "the considerations therein enunciated are applicable as well to simple kidnaping (Pen. Code, § 207)." (*People* v. *Williams, supra,* 2 Cal.3d 894, 901. See also *People* v. *Killean, supra,* 4 Cal.3d 423, 424; *People* v. *Shirley, supra,* 10 Cal.App.3d 268, 271; and *People* v. *Ramirez, supra,* 2 Cal.App. 3d 345, 355; but cf. *People* v. *Norman, supra,* 4 Cal.3d 439 where five counts of simple kidnaping and one count of attempted kidnaping were left undisturbed and affirmed.) Confusion is engendered by the application of the further criteria in *Daniels,* which are stated as follows, "the intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies . . . but also those in which *the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself.*" (71 Cal.2d at p. 1139, italics added.) This test readily may be applied where the defendant is convicted of a violation of section 207 as a lesser and included offense of a charged violation of section 209. (See *People* v. *Williams, supra,* 2 Cal.3d 894, 902-903; and *People* v. *Moreland, supra,* 5 Cal.App.3d 588, 593-594.) When there is no charge of robbery, or when, as in this case, the robbery is followed by a substantial asportation for purposes not connected with the robbery, the principle cannot be literally applied. It has been suggested that if a substantial asportation is incidental to the commission of some other offense, and does not increase the risk of harm over and above that necessarily present in the commission of that offense, there can be no simple kidnaping. (See *People* v. *Schafer, supra,* 4 Cal.App.3d 554, 560-561.) The cited case states, "It is significant that both rapes took place in the very vehicle in which the movements were made. [Citation.]" (4 Cal.App.3d at p. 561.) It may, therefore, be distinguished from the instant case.

In *People* v. *Timmons* (1971) 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], a divided and temporarily constituted court gave precedence to the harm test over the movement test in construing section 209. The court stated, "The true test in each case is not mere mileage but whether

the movement of the victims *'substantially* increase the risk of harm' beyond that inherent in the crime of robbery itself. (Italics added; 71 Cal.2d at p. 1139.)" (4 Cal.3d at p. 415.) In support of this proposition it approved *People* v. *Schafer, supra,* and referred to *People* v. *Ramirez, supra,* as an example of where the risk was increased because the car was in fact wrecked. That sort of ex post facto reasoning, which was not necessarily the basis of *Ramirez,* is not persuasive. An abduction is either kidnaping at the outset or not. It should not depend on whether or not harm in fact results. Nor should it depend on whether or not another offense is charged. The rule proposed in the instruction is an unnecessary extension of the principle against multiple punishment. The bare majority also disapproved the test adopted by this court in *People* v. *Thomas* (1970) 3 Cal.App.3d 859 [83 Cal.Rptr. 879], that an increase in the likelihood of the accomplishment of the harm inherent in the principal offense by reason of the kidnaping will remove the proscription of *Daniels.* (4 Cal.3d at p. 414, fn. 1; and cf. 3 Cal.App.3d at p. 866; and see *People* v. *Moreland, supra,* 5 Cal. App.3d at p. 594.) Whatever support defendant could secure from these pronouncements if he had been charged with violation of section 209 is somewhat diluted by the court's ultimate ambiguous conclusion, "In the circumstances, this brief asportation may conceivably have increased the risk in some slight degree beyond that inherent in the commission of the robberies, but it cannot be said to have 'substantially' increased that risk," this, in turn, is qualified by the following footnote, "To avoid [?] misunderstanding, we reiterate that in a different set of circumstances a movement of five city blocks might well 'substantially' increase the risk and thereby expose the robber to a prosecution for kidnaping." (4 Cal.3d at p. 416.)

It is concluded that if there was error in refusing the instruction offered by the defendant, and in giving the pre-*Daniels* CALJIC instructions, the case is governed by the principles enunciated in *People* v. *Ramirez,* as follows: "The question arises, therefore, whether the cause should be reversed as to the kidnaping judgment and remanded for retrial on that charge under instructions that the jury find whether the victim had been removed a substantial distance from the place where she was seized, whether the removal and detention of the victim were merely incidental to the crime of attempted rape, and whether there had been a risk of bodily harm substantially greater than that necessarily involved in a rape by force and violence.

"The question of law involved is not as to any guaranty under the federal Constitution.

"Literally speaking, the instructions given were not a distortion of the language of section 207.

■ "Therefore, since the presumed error was in the instructions to the jury, the test to be applied is that of article VI, section 13 of our Constitution, that is, whether there has been a miscarriage of justice. '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' (*People* v. *Watson*, 46 Cal.2d 818, 836 . . . .)

"We are of opinion that it is reasonably probable that a result more favorable to defendant would not have been reached in the absence of the error." (2 Cal.App.3d at p. 357.)

## IV

The sustaining of defendant's four convictions necessitates consideration of the question of whether he has been subjected to multiple punishment in violation of section 654 of the Penal Code by reason of the four consecutive sentences which were imposed. Section 654 provides in pertinent part, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

■ "The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one. [Citations.]" (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637] [cert. den. 400 U.S. 927 (27 L.Ed.2d 187, 91 S.Ct. 190)]. See also *People* v. *Diaz* (1967) 66 Cal.2d 801, 806-807 [58 Cal.Rptr. 729, 427 P.2d 505]; *People* v. *Ford* (1966) 65 Cal.2d 41, 48 [52 Cal.Rptr. 228, 416 P.2d 132] [cert. den. 385 U.S. 1018 (17 L.Ed.2d 554, 87 S.Ct. 737)]; *In re Ward* (1966) 64 Cal.2d 672, 676 [51 Cal.Rptr. 272, 414 P.2d 400] [cert. den. 385 U.S. 923 (17 L.Ed.2d 147, 87 S.Ct. 238)]; *People* v. *Failla* (1966) 64 Cal.2d 560, 570 [51 Cal.Rptr. 103, 414 P.2d 39]; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Young* (1970) 9 Cal.App.3d 106, 111 [87 Cal.Rptr. 767] [hg. den.]; *People* v. *Flores* (1968) 267 Cal.App.2d 452, 459 [73 Cal.Rptr. 118]; *People* v. *Paxton* (1967) 255 Cal.App.2d 62, 72 [62 Cal.Rptr. 770]; *People* v. *Williams* (1966) 244 Cal.App.2d 658, 660 [53 Cal.Rptr. 392]; *People* v. *Nelson* (1965) 233 Cal.App.2d 440, 445 [43 Cal.Rptr. 626]

[cert. den. 384 U.S. 1025 (16 L.Ed.2d 1032, 86 S.Ct. 1942)]; *People* v. *Roth* (1964) 228 Cal.App.2d 522, 534 [39 Cal.Rptr. 582]; *People* v. *Bynes* (1963) 223 Cal.App.2d 268, 272 [35 Cal.Rptr. 633]; *People* v. *Mistretta* (1963) 221 Cal.App.2d 42, 43 [34 Cal.Rptr. 365]; and *People* v. *Fields* (1961) 190 Cal.App.2d 515, 518 [12 Cal.Rptr. 249].)

Where the only reasonable conclusion is that the kidnaping was part of a continuous course of conduct motivated by one objective, rape, the kidnaping although complete before the rape was committed will be treated as incidental to and a means of committing the rape. (*People* v. *Nelson, supra,* 233 Cal.App.2d 440, 446. See also *People* v. *Diaz, supra,* 66 Cal.2d 801, 807; *People* v. *Failla, supra,* 64 Cal.2d 560, 570; *People* v. *Lynch, supra,* 14 Cal.App.3d 602, 605; *People* v. *Flores, supra,* 267 Cal. App.2d 452, 459-460; *People* v. *Jaquette* (1967) 253 Cal.App.2d 38, 49 [61 Cal.Rptr. 209]; *People* v. *Livingston* (1967) 252 Cal.App.2d 630, 636, 637 [60 Cal.Rptr. 728]; *People* v. *Sheppard* (1967) 250 Cal.App.2d 736, 740 [58 Cal.Rptr. 814] [cert. den. 392 U.S. 910 (20 L.Ed.2d 1370, 88 S.Ct. 2071)]; *People* v. *Nelson, supra,* at p. 446; and *People* v. *Bynes, supra,* 223 Cal.App.2d 268, 271-273.)

The People contend that the question of determining the intent and objective of the defendant was properly resolved by the lower court. It was in fact presented to and passed on by the trial court at the time the defendant Laster was sentenced. His counsel submitted a memorandum and asserted that he could only be sentenced for the life term prescribed for forcible rape under Penal Code section 471. In *People* v. *Ferguson* (1969) 1 Cal.App.3d 68 [81 Cal.Rptr. 418], the court observed, ". . . the question of whether the acts of which a defendant has been convicted constituted an indivisible course of conduct is primarily a factual determination, made by the trial court, on the basis of its findings concerning the defendant's intent and objective in committing the acts. [Citations.]" (1 Cal.App.3d at pp. 74-75. See also *People* v. *Flores, supra,* 267 Cal.App.2d 452, 459; *People* v. *Jackson* (1967) 255 Cal.App.2d 584, 587-589 [63 Cal.Rptr. 359]; *People* v. *Paxton, supra,* 255 Cal.App.2d 62, 74; and *People* v. *Roth, supra,* 228 Cal.App.2d 522, 534-535.)

Nevertheless, there must be evidence to support the implied finding of the trial court that this defendant formed a separate objective and intent for the several offenses for which he was sentenced. He was not a direct actor, but if criminally responsible, was an aider and abettor of the kidnaping, the robbery, and the assault in the car. In order to sustain the conviction of Laster for the commission of those offenses it was necessary for the jury, and the trial court in passing on the sufficiency of the evidence, to find that he had the requisite knowledge and engaged in the conduct

which has been discussed above in connection with his conviction for robbery. It is, therefore, concluded that the evidence, in the light of his convictions, must be interpreted as requiring that all of the acts of which he was convicted were, as to him, committed within the objective and intent to both rob and rape the victim.

It is conceivable that defendant did not have the intention to have sexual intercourse with the victim until after the kidnaping and robbery had been executed. (See *In re Ward, supra,* 64 Cal.2d 672, 678; *People* v. *Thomas, supra,* 3 Cal.App.3d 859, 866; *People* v. *Ferguson, supra,* 1 Cal.App.3d 68, 75; *People* v. *Jackson, supra,* 255 Cal.App.2d 584, 587; *People* v. *Roth, supra,* 228 Cal.App.2d 522, 535; *People* v. *Mistretta, supra,* 221 Cal.App.2d 42, 45; and *People* v. *Fields, supra,* 190 Cal.App.2d 515, 518.) An examination of the foregoing cases reveals that each depends on facts and circumstances not present in this case. If the defendant had no criminal intent at the time the victim was first abducted, he should not have been convicted of any offense other than the rape. If he had the intent to kidnap and rob the victim when he placed his car across the road, he should have been charged with kidnaping for robbery instead of simple kidnaping.

His responsibility for the assaults committed by others (his own assault could only have been incident to the rape) can only be attributed to an intent to retain control of the victim until the intent to pursue sexual gratification had been satisfied. It is concluded that the evidence, in the light of the verdicts of the jury, requires the conclusion that this defendant acted with the intent and objective to kidnap and rob and rape the victim.

"If multiple punishment has been erroneously imposed, the appropriate procedure on appeal is to eliminate the effect of the judgment as to the lesser offense or offenses insofar as the penalty alone is concerned. [Citations.]" (*People* v. *Diaz, supra,* 66 Cal.2d 801, 807. See also *In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998].) The punishment for forcible rape being the more onerous, the sentence for kidnaping must be set aside.

The convictions are affirmed and the judgment is reversed insofar as it imposes sentences for kidnaping and for assault by means likely to produce great bodily injury.

Molinari, P. J., and Elkington, J., concurred.